Bryan vs. Acee et. al.

John H. Bryan, plaintiff in error, vs. Alfred L. Acee, Tilman H. Mahone and Joseph D. Brooks, defendants in error.

If the Court charge the jury in an action of trespass, that if they should believe, under evidence, that the plaintiffs were entitled to exemplary damages, it was in their discretion to find any amount not exceeding the amount laid in the declaration, it is error, provided the amount laid in the declaration was so great, if found, as to show prejudice or partiality on the part of the jury. Such a charge, in such a case, is calculated to exert an improper influence on the jury, and is wrong in itself.

Trespass, *vi et armis.* Tried before Judge Worrill, in Talbot Superior Court, September Term, 1858.

This was an action of trespass, brought by the defendants in error, as trustees of Jackson Academy, in the county of Talbot, against the plaintiff in error.

The declaration alleged, that the plaintiff in error, on the sixteenth day of January, in the year 1855, broke into the school-house of defendants in error, situated on part of lot of land number 42, in the 23d district of Talbot county, and tore down said school-house, and carried away the materials, and converted them to his own use. Damages were laid at two thousand dollars.

On the trial of the case, plaintiffs in the Court below offered as a witness, *Nathaniel Athen*, who testified that he was formerly the owner of the land on which the house, the subject of this suit, was situated; has known the house for nearly twenty years; it had been used for academical purposes; had heard of a school being made up to be kept in said house, in the year 1855. The last time witness saw the house was in the year 1853; it was then worth one hundred and fifty or two hundred dollars. Sold to defendant, Bryan, the whole of lot of land number 42, in the 23d district of Talbot; gave defendant notice, at the time he sold said lot, that witness had previously made a deed to two acres, on which the school-house was situated, to the trustees of the same; that by said previous deed the two acres belonged to the trustees as long as they continued to use the house for academical purposes; but when they ceased so to use it, the *land* was to revert to witness, but the *house* and *improvements* were to be the property of the trustees. The reason why witness did not except said two acres, in his deed to Bryan, was, that he thought the trustees might, at some future day, cease to use the house for academical purposes, and he was willing that Bryan should then have the reversion.

Plaintiffs then introduced and read in evidence, a deed made on the 15th day of October, 1839, by Nathaniel Athen to R. G. Crittenden, Peter F. Mahone, Samuel Fuller, William T. Holmes, A. L. Acee, Daniel Owen and Nathaniel

Athen, trustees of Bellvue Academy, conveying the aforesaid two acres of land to the said trustees and their successors in office forever, in fee simple, " except with this condition, that when the said trustees or their successors in office cease to use said bargained premises for academical purposes, then the said premises to revert back to said Athen, or his heirs, &c., except the improvements on said premises."

Plaintiffs then proved by one *Asa Teal*, that defendant took down and carried away the house early in the year 1855, and occupied it as a residence for his family. The patrons of the school were put to some inconvenience by the removal of the house.

*James Barr* testified, that the house was taken down early in 1855; the school which had been made up was " delayed from going on" for nearly two months; there had been a division of opinion in the neighborhood as to whether the school should be kept in this house or at the Presbyterian Church near it; thinks the church would have been more central; the house when torn down was in a dilapidated condition.

*Tilman H. Mahone* testified, that a school had been made up to commence the week after the house was taken down; Robert Bryan was an applicant for the school; John W. Dozier was to teach it; the school-house was worth two hundred dollars; the patrons had to wait a month or six weeks for a house in which to hold the school; after which time it was kept in a building attached to the Presbyterian Church; permission to teach in said building was given as soon as it was applied for; some of the patrons wished to move the house that was torn down to a more eligible situation.

*Alfred L. Acee* testified, that the house when torn down was worth two hundred and fifty dollars.

Defendant then offered and read in evidence, a deed made by Nathaniel Athen to defendant, Bryan, dated 7th January, 1853, and conveying lot of land number 42, in the 23d district of Talbot.

Defendant then proved by *Staten Fulford*, that he was present when the house was taken down; it was badly decayed; the shingles were rotten; both ends of the house were open, having not more plank in them than would have closed up one end; the sills were decayed, the windows all out, and the floor decayed and broken; the house when taken down was worth seventy-five or one hundred dollars.

Defendant then introduced *William T. Holmes* who testified, that he was present when the house was taken down; thinks it was worth from thirty to one hundred dollars; for ten years before it was taken down, it was used for academical purposes not more than one-third or one-half of the time.

*Robert Bryan* testified, that when the house was taken down it was not fit to be used as a school-house; no school was kept in it in 1854; it was worth when taken down about one hundred dollars.

Here the testimony closed, and the Court instructed the jury, among other things, that damages were either actual or exemplary, and stated to them the meaning of the terms *actual* and *exemplary* damages. The Court then charged them that, in a case like this, they might find both actual and exemplary damages; that the object of the law, in allowing the jury to give exemplary damages, was to deter those who had violated the law from violating it again; and also, to make their punishment a warning to others. That they should examine the facts, and determine whether the defendant should be made to pay exemplary damages; that if, from the facts, they should believe the plaintiffs were entitled to exemplary damages, then the law left it to their discretion to say what the amount should be, and they could find any amount they thought proper, provided they did not go beyond the amount claimed in the declaration. That they should exercise this discretion, not capriciously, but with prudence and wisdom; that inasmuch as it was admitted that defendant took down the house, they should look to the *quo animo* with which it was done; that if they should believe he knew

the house was not his own, that it was not conveyed to him in Athen's deed, and that when the trustees ceased to use the land the house was to remain theirs; that if they should further believe defendant tore down the house in a spirit of recklessness, in utter disregard of the rights of plaintiffs, then plaintiffs ought to have exemplary damages. But if they should believe, from the evidence, that the school-house was not defendant's property, that it did not pass to him under Athen's deed, but that he made a mistake and tore it down supposing it was his own property, then they ought not to give exemplary damages.

The jury found a verdict in favor of plaintiffs, for five hundred and sixty-seven dollars damages, with costs of suit.

At the same Term, defendant moved for a new trial, on the following grounds:

1st. Because said verdict is contrary to law.

2d. Because the damages found by said verdict are excessive.

3d. Because said verdict is contrary to evidence.

4th. Because the Court erred in the foregoing charge to the jury.

On hearing the motion for a new trial, the Court overruled the same, and defendant excepted.

SMITH & POU, for plaintiff in error.

BETHUNE; PERRYMAN, *contra.*

*By the Court.*—McDONALD J. delivering the opinon.

We consider the damages given by the jury, in this case, high, under the evidence; but we do not consider them so excessive as to warrant the inference of partiality, prejudice, or corruption on the part of the jury who rendered the verdict, especially under the charge of the presiding Judge. The damages are laid in the declaration at two thousand dollars. The highest value of the house which had been

torn down and removed, proven by any witness, was two hundred and fifty dollars; the lowest value from thirty to one hundred dollars. A verdict for two thousand dollars, under the evidence, would, in our judgment, have been excessive, and yet the Court charged the jury that if they should believe the plaintiffs were entitled to exemplary damages, the law left it to their discretion " to say what the amount should be, and they could find any amount they thought proper, provided they did not go beyond the amount claimed in the declaration." We must suppose that this charge of the Court exerted an influence over the mind of the jury, as to the amount of damages, especially when they found a verdict for more than double the value of the property, proven by any witness. Believing that the charge of the Court was wrong, and to the injury of the party, we are bound to grant a new trial. In all other respects, we think the charge was unexceptionable, at least it was so in the opinion of two of the members of the Court.

Judgment reversed.