P. J. Willis & Bro. v. W. L. McNeill.

(Case No. 1285.)

1. Attachment — Reconvention — Evidence admissible.— In an attachment suit on a note given for a balance due on a settlement of a former attachment, the issue being on a plea in reconvention for damages for the wrongful and malicious suing out of the last attachment, it was not error to admit evidence showing the circumstances connected with the first attachment and its settlement.

2. Bill of exceptions.— A bill of exceptions which shows that the only objection raised to evidence offered was obviated, and that the evidence was then introduced without further objection, shows nothing of which the party can complain.

3. Evidence — Opinion of witness.— Questions asking what would be the effect on the credit and commercial standing of a merchant should he ask and obtain an extension of time on his indebtedness, or execute and have recorded a mortgage to secure his indebtedness, are objectionable, as seeking to elicit opinions and not facts.

4. Evidence — Irrelevant.— Questions whether it was customary for a merchant in good standing to execute a mortgage to secure his debts, or, on being requested by his creditor, to furnish a statement of his assets and liabilities, were irrelevant to the issue whether an attachment, sued out on the ground that the defendant was about to convert his property into money for the purpose of defrauding his creditors, was sued out wrongfully and maliciously, or not.

5. Argument of counsel — Wealth of parties — Practice.— It is error in the court to allow counsel to discuss before the jury the irrelevant question of the wealth of a party, and to insist that the wealthier the parties the greater should be the amount of damages assessed against them; and this error is not cured by the failure of opposing counsel to interpose objection at the time.

6. Misleading charge — Refusal of special charge correcting.— Where portions of the charge given were calculated to mislead the jury, although the view of the law intended to be presented was correct and would have been rightly understood by one of legal training, a special charge clearly presenting the law, being asked, should have been given.

Vol. LVII — 30

7. MALICE — PROBABLE CAUSE.— Malice is not an inference of law from the want of probable cause, but is a mere inference of fact, which the jury may or may not draw, according to the facts and circumstances of the case.

8. SAME — PRINCIPAL AND AGENT — EXEMPLARY DAMAGES.— To make the principal liable for exemplary damages because of the malice of his agent, the evidence must show that he had knowledge of and participated in the malice, or afterwards ratified, adopted or approved the malicious acts.

9. ACTUAL AND EXEMPLARY DAMAGES — EXCESSIVE EXEMPLARY DAMAGES.— In this case the jury found $1,084.50 actual damages, and $12,000 exemplary damages. Held, that the exemplary damages were excessive.

10. CHARGE OF COURT — FORM OF — SUGGESTIONS.— See the opinion in this case for suggestions objecting to the form of a charge, which, in a suit for damages, tells the jury that, if they find damages, they are authorized to find an amount not to exceed so many dollars, naming the amount claimed in the petition.

11. CHARGE OF COURT — REPETITIONS IN.— See also the opinion for a suggestion as to the evil effects which may result from the repetition in the charge of a legal principle which has already been once clearly stated.

12. EXEMPLARY DAMAGES — LEGISLATION LIMITING, SUGGESTED.— See also the opinion for suggestions as to the propriety of a legislative limit to the amount of exemplary damages recoverable.

APPEAL from Henderson. Tried below before the Hon. John C. Robertson.

This was an attachment suit instituted by P. J. Willis & Bro., of Galveston, March 8, 1881, on a promissory note for $385.89, dated January 29, 1881, due at ninety days, executed by the defendant W. L. McNeill. The affidavit for the attachment was made by C. L. Coyner, an attorney, acting under a power of attorney from plaintiffs, and it charged that McNeill was "about to convert his property into money for the purpose of placing it beyond the reach of his creditors." On application of plaintiffs, certain goods levied on by virtue of the writ of attachment on April 4th, were sold by order of the court in July, 1881, for $425.15.

McNeill's answer admitted the justness of the note, but alleged that the attachment had been sued out wrongfully, maliciously and without probable cause; that the plaintiffs caused and procured the issuance and levy of the writ, and in doing so were moved by malicious motives; claiming damages for injury to the goods whilst under seizure, $1,500; also damages to his business, to his credit and standing as a merchant, and claiming as further damages $20,000.

On the trial the evidence showed that McNeill had been in the mercantile business for about eighteen years. In June, 1880, he and N. J. Harrison formed a partnership, which was dissolved in the latter part of January, 1881, by McNeill buying Harrison out, giving or rather promising Harrison $1,000 for his interest, and assuming the firm indebtedness. The firm of McNeill & Harrison was at that

time indebted to plaintiffs $1,026. McNeill testified that he had quit trading with plaintiffs for several years; that he did not quit on friendly terms, and that the bill for $1,026 was made after strong solicitations, and was the only one he had made with them since. Late in January, 1881, Field, an agent of plaintiffs, acting under instructions from plaintiffs informing him that McNeill had been sued in Galveston, and that the firm of McNeill & Harrison were in trouble, called to see McNeill, and demanded payment of the $1,026 debt, or that it be secured. He also asked a statement of defendant's assets and liabilities. McNeill told him he could not make a monied payment of $250, and declined to secure the claim, or to make the statement asked for, but testified that he told Field what property he had and that he would pay the debt in twenty days. In the course of their interview it appeared that McNeill was shipping his cotton to St. Louis, and Field testified that McNeill said that he shipped it there because he wanted money. McNeill testified that Field wanted him to ship some cotton to Galveston, to Willis & Bro., to be applied to his account; that it was also more convenient to him to ship to St. Louis; that there was considerable competition between St. Louis and Galveston as cotton markets, and that most of the money realized from shipments to St. Louis was sent to Galveston to pay debts there. Harrison testified that they shipped their cotton to St. Louis because they thought it the best market, and there was other testimony that St. Louis was the better market for lower grades of cotton. After his interview (during which McNeill says there was some feeling between them), Field testified that he got Coyner to examine the records of Henderson county to ascertain the condition of McNeill's property, which examination showed several mortgages on his real estate, of which up to that time witness said he had not heard. Acting under advice from Coyner, he sued out an attachment on the $1,026 debt. This was levied on some cotton, but the matter was arranged by McNeill selling to Coyner, as agent for plaintiff, cotton sufficient to reduce the $1,026 to $385.90, and for that amount McNeill gave the note sued on.

Previous to the institution of this suit two other suits were brought by other parties against defendant, and attachments issued in these suits were settled without levy previous to the levy of the attachment of Willis & Bro. on April 4th. Coyner testified that he sued out the attachment because he honestly thought the facts existed as stated in the affidavit, and that he acted throughout as he was authorized and required by plaintiffs to do. McNeill testified that he had settled all his commercial debts except one of $450, not includ-

ing his debt to Harrison. He testified to the destruction of his credit by the attachment proceedings, and that previously he had no difficulty in buying on a credit, and did a business of $10,000 a year. At the trial he was still doing a small business, mainly selling the remnant of his old stock. There was evidence tending to support his character for honesty, and there was no evidence tending to show that he was slow in paying, had been to protest, etc. The mortgages of record by McNeill bear date in 1878, 1879, and the last in May, 1880. McNeill testified that at the date of the attachment all the mortgage debts had been paid off except one of $800, though the record failed to show their release.

This statement is but an outline of the case as developed by the evidence, omitting details and matters having more or less bearing on the merits of the case, but not regarded essential to a proper understanding of the opinion, or the questions decided.

The charge of the court, omitting the part devoted to a statement of the case, and some formal directions at the conclusion, was as follows:

"You are the exclusive judges of the facts of this case, to be ascertained from the testimony of the witnesses, and it will be your duty to find for the plaintiffs the amount of the note sued on, and the interest due thereon to this date at ten per cent. per annum; the burden of proof to establish the defendant's plea in reconvention for damages devolves upon the defendant.

"If you believe, from the testimony, that the plaintiffs sued out the attachment in this case, and the ground for suing out said attachment was untrue in fact, that is, if they believed that the defendant was not 'about to convert his property, or any part thereof, into money for the purpose of placing it beyond the reach of his creditors,' the suing out of said attachment would be in law wrongful, and in such case the plaintiffs would be liable to the defendant for the actual damages sustained by him.

"If, besides being untrue, the plaintiffs in suing out the attachment acted maliciously, and without probable cause for believing the ground of the attachment to be true, the plaintiffs are liable, in addition to the actual damages, by way of compensation for injuries to his credit or standing as a merchant, and injury to his business, if any be proven, for vindictive or exemplary damages, and as a punishment for the wrongful and oppressive use of the process of attachment. Malice and the want of probable cause must both concur to support the charge of maliciously suing out the attachment. Neither is alone sufficient. Any unlawful act done willfully and purposely

which is to the injury of another, is, as against that person, malicious. Any improper motive constitutes malice; in the sense here used, it does not necessarily imply hatred or ill-will, and may be implied in the want of probable cause; but this implication may be repelled by facts and circumstances indicating a fair and legitimate purpose and honest pursuit of a claim believed to be just.

"If you find in the case that the ground on which the attachment was sued out did not in fact exist, and you also find that it was maliciously and without probable cause sued out, and you find that the malice, if there was malice, was the malice of the agent, you cannot impute such malice to P. J. Willis & Bro. by presumption. But if there was a want of probable cause for suing out the attachment, malice may be implied; and if P. J. Willis & Bro. authorized their agent to sue out the attachment, or concurred in it, assented to it, or adopted it, or ratified it after it was done, the law would impute the malice to them. If the plaintiffs authorized or required the agent to sue out this attachment without knowing the cause to exist, they did so at their peril; and in absence of probable cause to believe the ground was true, malice would be imputed to them, unless the proof shows good faith in an honest effort to collect a just debt. In order to decide whether the attachment was wrongfully sued out, you must ascertain whether the defendant McNeill was about to convert his property for the purpose of placing it beyond the reach of his creditors. If he was, he can recover no damages in this suit. If he was not so about to convert his property, he would be entitled to recover as explained in this charge. If the jury believe there was a want of probable cause for suing out this attachment, and you further believe, from the testimony, that the plaintiffs, P. J. Willis & Bro., had not authorized the attachment to be sued out, and they have not concurred in it since, or approved or adopted the acts of their agent, malice would not be implied against them.

"Probable cause, as applied to this case, is a belief founded on circumstances sufficiently strong to justify a reasonable man in believing that the grounds for suing out the attachment were true; that is, that McNeill was about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors.

"As before instructed, if the ground for suing out the attachment in this case was not true in fact, the suing out of the attachment would be wrongful either sued out by plaintiffs or their agent, and the plaintiffs would be liable to the defendant for the actual dam-

ages sustained by him, by reason of the suing out of said attachment and by levying on and seizing the defendant's goods.

"In this case the goods having been sold, the measure of actual damages would be the value of the goods so seized at the time taken, and at the place taken, with eight per cent. interest thereon from the date of the seizure to this date, not to exceed $1,500. If you find that the ground for suing out the attachment was true in fact, you will on this issue find for the plaintiffs, and you need not inquire further on the question of damages; because if in fact the defendant was about to convert his property or any part of it into money for the purpose of placing it beyond the reach of his creditors, he can neither recover actual or exemplary damages, for in such case he would be guilty of a fraud on his creditors which would authorize an attachment. But if you find that the ground for suing out the attachment was not true under the above issue, you will find for the defendant the actual damages, *i. e.*, as above explained. You will next inquire whether the same was maliciously sued out and without probable cause. If you find it was, you will then be authorized to find for the defendant exemplary damages not to exceed $20,000. In this you are authorized to look to and allow such reasonable compensation for injury to his business, his credit and commercial standing, if any have been proven, as you believe to be just and right. In case of malicious suing out of an attachment, the law has fixed no accurate rule for the measure of damages except the sound discretion of the jury, under all the evidence in the case, looking to the injury to defendant's business, his credit and standing as a merchant, if any are proven, and giving to the defendant such compensation as he ought in justice to receive and the plaintiffs ought in justice to pay, reaching your consideration without passion or prejudice for or against either party.

"And in case of malicious suing out of this attachment, the jury are authorized, in addition to allowing compensation to the defendant for the injuries sustained by him, to exceed this, and give to the defendant such damages as will punish the plaintiffs, by setting a public example to prevent the repetition of the like wrongs. As to the amount of this, if anything be allowed, you are to be governed by your own sound judgment and discretion in view of the objects to be attained. If you find the attachment wrongfully sued out and allow the actual damages therefor, and also find that it was maliciously sued out and allow exemplary damages therefor, you should show by your verdict the amount of actual damages and the amount of exemplary damages separately. If there was probable

cause for suing out the attachment, and the plaintiffs honestly be-
lieved the cause existed, yet if in truth and in fact the defendant
would be entitled to recover the actual damages, and if besides being
untrue, there was no probable cause or reasonable ground to believe
the grounds existed, and the plaintiffs were moved by an unlawful pur-
pose and malice, as before expressed, the defendant would be entitled
to recover exemplary damages to compensate the defendant for the
injuries sustained, and by way of punishment to the plaintiffs as an
example to the public to prevent a repetition of the act. In no
event can you allow the defendant damages unless it be shown that
the grounds alleged for the attachment were not true in fact. In
estimating the amount of damages to be awarded, if any are allowed
by you under the law of this charge and the testimony of the wit-
nesses, you are to take into consideration all the facts and circum-
stances proven in the case, including the situation of the parties and
the transactions between them, and endeavor to award a just and
fair compensation for the damages sustained, if any are proven, and
if entitled to nothing under the law and the testimony, allow
nothing."

The jury found for plaintiffs the amount of the note and interest.
They found for the defendants $1,084.50 actual damages, and $12,000
exemplary damages. Judgment was rendered in accordance with
the verdict, and a motion for new trial being overruled, plaintiffs
appealed.

The following bills of exception are inserted, as necessary to a
full understanding of the points decided:

"Be it remembered that on the trial of the above cause, that
while the defendant was on the stand as a witness in his own be-
half, his counsel asked him what effect the issuance of an attach-
ment against a merchant in good standing would ordinarily have on
his credit and commercial standing; which was objected to on the
ground that the defendant had not qualified himself to answer.
The objection was sustained, and he was then asked if he was a
merchant, and if he was acquainted with the usage and customs of
commercial men in the cities so as to know what effect the suing
out of an attachment would have on the credit of a merchant in
good standing. He answered that he was. The first question
above was then repeated, to which no objection was made, and the
defendant answered it would be "ruinous." Afterwards, during
the progress of the trial and after the defendant had concluded his
evidence, and while the plaintiffs were offering the evidence in de-
fense to the plea in reconvention, the plaintiffs asked of one of their

witnesses a similar question to the one first propounded to McNeill above, to which defendant objected, and the court sustained the objection; whereupon the plaintiffs' counsel stated that he understood the court as allowing such testimony expressly to McNeill being allowed to express what would be the effect of suing out an attachment, etc., as stated above. The court stated that no objection had been made to the question to McNeill, and if it had been it would be sustained. The plaintiffs' counsel stated he thought he had, and objected now to exclude the answer of McNeill, stating that the suing out of an attachment against a merchant in good standing would be "ruinous." The court excluded the above answer of McNeill to said question, and then and there so decided, and informed the jury not to consider said answer.

" Be it remembered that, on the trial of the above entitled cause, the plaintiffs introduced as a witness T. F. Murchison, who swore that he was a merchant, and that he had been merchandising in Henderson county for twenty-five years, and that he was well acquainted with the customs and usages among merchants, and he knew what would be the effect on a merchant's credit and commercial standing to get an extension of time on his indebtedness,— to ask and obtain an extension of time on his indebtedness,— and execute and have recorded where he did business a mortgage to secure his indebtedness. The witness was then asked what effect ordinarily it would have on a merchant's credit and commercial standing to ask for and obtain an extension of time on his indebtedness, and then to execute and have recorded a mortgage on his property to secure said indebtedness. This question was objected to by the defendant, and the court sustained the objection. The witness was then asked whether or not it is customary for a merchant in good standing to execute mortgages on his property to secure his debts. This question was objected to by the defendant, and the objection sustained by the court. The witness was then asked whether or not, in ascertaining a merchant's solvency, the prominent inquiry was as to the incumbrances on his property. The defendant objected to this question, and the court sustained the objection. The witness was further asked whether or not it was customary for a merchant, on being requested by his creditors, to furnish a statement showing his assets and liabilities. Defendant objected to the question, and the court sustained the objection.

" Be it understood that, on the trial of the above entitled cause, Brock Robertson, Esq., one of defendant's counsel, was making the concluding argument before the court and jury in the case, said

attorney arguing before the court as a proposition of law, and also before the jury, that in estimating the amount of damages for which plaintiffs were liable, the wealth of plaintiffs was a proper and legitimate matter of consideration, and insisted that the wealthier the plaintiffs were the greater the amount of exemplary damages that should be assessed against them. Plaintiffs' counsel made no objection to this at the time, but now tender to the court this bill of exceptions thereto, and ask that the same may be signed, sealed and filed as a part of the records in this case, which is accordingly done."

*Manion, Adams & Watkins*, for appellants

*Richardson & Jones* and *Robertson & Finley*, for appellees, filed elaborate briefs and printed arguments, but their length and the space occupied by the statement of the case, and the opinion, precludes their insertion.

BONNER, ASSOCIATE JUSTICE.— There are nineteen assigned errors in this case, but we do not deem it necessary or profitable to pass upon them all, and shall confine ourselves to those deemed most material.

The first and seventh assigned errors will be considered together, and are as follows:

" 1. The court erred in permitting defendant to introduce any evidence concerning the issuance, levy and settlement of the attachment issued January 29, 1881, as shown by bill of exception No. 1, herewith filed."

" 7. The court erred in permitting defendant's attorneys to discuss before the jury the facts and circumstances connected with the issuance, levy and settlement of the attachment issued January 29, 1881, as shown by bill of exception No. 7."

The evidence shows that the note upon which the attachment in the present case was sued out, was the balance due upon the settlement of the prior attachment of January 29, 1881.

We are of opinion, that, under the circumstances, the court did not err in permitting this testimony to be introduced, or in permitting the attorneys for the defendant to comment upon the same. The facts attending the first attachment may have served to throw light upon the second, and if so, either party could have given them in evidence. This case differs from that of Blum *v.* Gaines, decided at the last Austin term.

The second assigned error is that "The court erred in permitting defendant to be asked what effect on a merchant's credit the issuance of an attachment would have, as shown by bill of exception No. 2."

Rule 58 for the government of the district courts provides that "Exceptions to the admission of evidence, where the ground of objection is assigned, shall be considered in reference to the objections made to it, and the objection shall be stated in the bill of exceptions taken to its admission or exclusion."

This bill of exceptions shows that the objection raised was obviated, and that no further objection was made. Under the circumstances the appellants cannot complain, and particularly as the testimony was subsequently withdrawn by the court from the jury.

The third assigned error is that "The court erred in sustaining defendant's objection to the several questions asked the witness Thomas F. Murchison, as shown by bill of exception No. 3."

In response to this alleged error, I am instructed by a majority of the court to say, that, so far as the questions sought to elicit the opinions of the witness, they did not relate to a subject matter which brought it without the general rule that facts and not opinions should be stated; and that so far as they sought to prove the usages and customs of merchants, they were not sufficiently pertinent to the particular ground upon which the affidavit for the attachment was based, as to make the testimony sought, admissible. The bill of exceptions fails to show the ground of objection to the questions asked.

The eighth assigned error is that "The court erred in permitting defendant's attorney in the concluding argument to discuss the wealth of the plaintiffs, and to insist that the *wealthier* the plaintiffs were the greater the amount of damages that should be assessed against them, as shown by bill of exception No. 8."

The evidence submitted on the trial of a cause should be confined to the issues made by the pleadings, and it is the sworn duty of the jury to try the case according to the law given them in charge by the court and the evidence submitted.

The rules for the government of the district court prescribe that "Counsel shall be required to confine the argument strictly to the evidence and to the argument of opposing counsel;" and that "The court will not be required to wait for objections to be made when the rules as to argument are violated, but should they not be noticed and corrected by the court, opposing counsel may ask leave

of the court to rise and present his point of objection." Rules 39 and 41.

It is further provided (Rule 121), that any supposed violation of the rules to the prejudice of a party may be reserved by bill of exceptions, presented as a ground for a new trial, and assigned as error by the party who may have conceived himself aggrieved by such supposed violation.

Under these rules the duty devolves affirmatively, first, upon counsel to confine the argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument. If both the counsel who is making the argument and the court should fail in the discharge of this duty, then the rules give to opposing counsel the privilege, but does not make it his duty, to then present his point of objection. This discretion given to counsel, as to whether he will make the objection at the time, was doubtless based upon the well known embarrassments and often prejudice which genererally attend the interruption of the argument of one counsel by another; and was intended to place that as a duty where it properly belongs — upon the presiding judge.

In announcing as a rule of practice that which was subsequer incorporated into the present rules of court above quoted, it is by the late learned chief justice of this court, in Thompson v. The State, that "Zeal in behalf of their clients, or desire for success, should never induce counsel in civil cases, much less those representing the state in criminal cases, to permit themselves to endeavor to obtain a verdict by arguments based upon other than the facts in the case and the conclusions legitimately deducible from the law applicable to them." It is further said that such practice is of sufficiently grave importance and so highly objectionable as to require the decided condemnation of the court. 43 Tex., 274.

Whether counsel under such circumstances remain silent or object, may be alike prejudicial to his cause. Silence may be construed into acquiescence, objection may call forth a damaging repartée.

In Berry v. The State, the distinguished Judge Lumpkin, in commenting upon a similar question and upon the duty of the court to check the argument of counsel, says: "that the practice complained of is highly reprehensible, no one can doubt. It ought in every instance to be promptly repressed. For counsel to undertake by a side wind to get that in proof which is merely conjecture, and thus to work a prejudice in the mind of the jury, cannot be tolerated.

Opinion of the court.

Nor ought the presiding judge to wait until he is called on to interpose. For it is usually better to trust to the discrimination of the jury as to what is and what is not in evidence, than for the opposite counsel to move in the matter. For what practitioner has not regretted his untoward interference, when the counsel thus interrupted, resumes, 'yes, gentlemen, I have touched a tender spot, the galled jade will wince; you see where the shoe pinches.'" 10 Ga., 522.

This question was also elaborately discussed, and the practice very gravely condemned by our court of appeals, in Hatch v. The State, 8 Ct. App., 416.

The argument of counsel, complained of in the present case, did not legitimately belong to any proper issue in the case; was not based upon any evidence adduced, or which could have been properly adduced on the trial, and was calculated to inflame the passions and excite the prejudices of the jury. That it did so inflame and excite them may well be presumed from the very large verdict which was returned.

The ninth assigned error is that "The court erred in refusing the first special charge asked by plaintiffs, to the effect that plaintiffs could and should not be held responsible for any malicious acts of their agent who sued out the attachment, unless they (the plaintiffs) had knowledge of, and participated in, said malicious acts, or unless said plaintiffs afterwards ratified, adopted or approved said malicious acts of their said agent."

This will be considered in connection with the eleventh, as follows: "The court erred in the general charge to the jury, wherein the following language is used, to wit: 'If you find in the case that the grounds on which the attachment was sued out did not in fact exist, and you also find that it was maliciously and without probable cause sued out, and you find that the malice, if there was malice, was the malice of the agent, you cannot impute such malice to P. J. Willis & Bro. by presumption. But if there was a want of probable cause for suing out the attachment, malice may be implied, and if P. J. Willis & Bro. authorized their agent to sue out the attachment, or concurred in it, assented to it, or adopted or ratified it after it was done, the law would impute the malice to them.'"

The special charge asked, and the refusal of which is assigned as error, was: "If the evidence in this case shows that the affidavit for the attachment was made by an agent or attorney, and not by the plaintiffs in person, and if the evidence further shows that said affidavit was so made by said agent or attorney maliciously and without probable cause, then before the plaintiffs could be held responsible

therefor, and before you could find a verdict against said plaintiffs for any damages which defendant may have sustained by reason thereof, the evidence must further show that plaintiffs at the time had knowledge of, and participated in, said malice, or that since that time said plaintiffs have ratified, adopted or approved the said malicious act of said agent and attorney who made said affidavit; and unless the jury should find from the evidence that plaintiffs so had knowledge of, and participated in, said malice, or that they afterwards ratified, adopted or approved said malicious acts, the jury should find for the plaintiffs on this issue."

This was a clear presentation of the doctrine of the liability of a principal for exemplary damages for the act of the agent in suing out a writ of attachment, and is the rule adopted by this court, and should have been given, if not embraced in the general charge. Wallace.v. Fineburg, 46 Tex., 50; Hays v. Railroad Co., id., 272.

Although this view of the law. was doubtless entertained by the learned judge below, and was so presented as to be thus understood by the legal mind, yet portions of the charge were calculated to mislead the jury by the failure to clearly draw the distinction between the non-liability of the plaintiffs for exemplary damages by reason of the individual malice of the agent, and their liability therefor if they participated therein, or adopted or ratified the same with a knowledge of the facts.

It is quite possible that the jury may have construed the portion of the general charge above quoted to mean that they should, as a matter of law, infer malice from the want of probable cause. This inference, however, does not necessarily follow as a conclusion either of law or fact, but it is a mere inference of fact, which the jury may or may not draw, according to the facts and circumstances of the case. Griffin v. Chubb, 7 Tex., 603.

We are of opinion that, upon the proposition contained in the special charge asked and refused, the general charge may have misled the jury, and that the special charge asked should have been given.

The thirteenth, fourteenth and sixteenth assigned errors will be considered together, and are as follows:

"13. The court erred in the general charge to the jury, wherein the following language is used, to wit: 'In this case, the goods having been sold, the measure of actual damages would be the value of the goods so seized at the time taken, and at the place taken, with eight per cent. interest thereon from the date of the seizure to this date, not to exceed $1,500.'"

In another part of the charge the jury are instructed, that "you will next inquire whether the same (the attachment) was maliciously sued out and without probable cause; if you find it was, you will then be authorized to find for the defendant exemplary damages not to exceed $20,000."

"14. The court erred in the general charge to the jury, wherein the following language is used, to wit: 'And give to the defendant such damages as will punish the plaintiff by setting a public example to prevent the repetition of the like wrongs.' And the court erred in repeating the above language in said charge."

It is complained because this proposition was announced in three different clauses of the charge.

"16. The whole of said charge is erroneous because it is argumentative in its character, is a continuous recital and repetition of the ways and means by and through which defendant would be entitled to recover damages of the plaintiff, and was in its very nature calculated to and did confuse, prejudice and mislead the jury, and besides, is a commentary upon the weight of the evidence adduced on the trial."

The phraseology and arrangement of the charge to the jury, when it conforms to the requisites of the statute and to the law of the case as applied to the issues and evidence, must be left, in a great degree, to the taste and discretion of the judge who gives it.

The charge under consideration conforms in its general features to those usually given in such cases, and what we say under these assignments is designed as suggestions which are deemed worthy of consideration, as tending to prevent the frequent recurrence of similar assigned errors to the above.

Although it is common to use such expressions as that objected to in the thirteenth assigned error in charges to the jury, and may be said to be authorized by that part of the pleadings in which the plaintiff alleges the amount of his damages, yet the practice is subject to objection. It is a well known fact that it is the almost invariable rule with the pleader, as a mere matter of form, to place the general allegation of damage at an amount far exceeding any reasonable calculation. When, therefore, the jury are told that, if they find for the plaintiffs, they are authorized to give damages not exceeding the amount of formal damages thus laid in the pleadings, they may take such an expression as an intimation upon the part of the court that the evidence authorized a verdict for the full amount claimed.

In Bryan v. Acre, 27 Ga., 87, as quoted in note, p. 332, 2 Sedg. on

Damages (7th ed.), where the highest value of a house torn down and removed by the defendant, testified to by any witness, was $250, and the court instructed the jury that if they found it a case for exemplary damages, they might find a verdict for any amount not exceeding the sum laid in the declaration, which was $2,000, and the jury found a verdict for $567, this was set aside on the ground that this instruction might have improperly influenced the verdict as to the amount of damages. See, also, Glasscock v. Shell, decided at last Austin term.

Under our practice, the pleadings are always read to the jury, and they are thereby advised of the amount claimed, and if, peradventure, they should now and then exceed this, the error can be easily corrected by a *remittitur*.

Upon the question raised in the fourteenth and sixteenth assigned errors, it is suggested that if a distinct legal proposition as applicable to the issues and evidence is once clearly announced in the charge, its repetition may tend to impress the jury with the belief that, in the opinion of the presiding judge, the facts demand its application in the particular case, and thus their verdict may thereby be unintentionally influenced.

The nineteenth assigned error is to the effect that the verdict is excessive and that a new trial should have been granted. Exemplary damages are said to rest in the sound discretion of the jury. This discretion is often abused, but the courts, from the very necessity of the case, are frequently embarrassed in deciding where the line of proper discretion ends, and where that of arbitrary abuse commences. The legislature wisely, in the administration of the criminal law, has seen proper to limit this discretion, by providing as a general rule in those cases where a fine in money is prescribed, either as the only punishment, or as an alternative for imprisonment, that the same shall not be less nor more than a certain amount. As illustrations, the fine for false imprisonment does not exceed $500; for libel, which affects the reputation and may also affect the business credit of a party, is not less than $100 nor more than $2,000; for malicious prosecution to extort money or for the payment or security of a debt, very similar to the wrongful and malicious suing out an attachment, not less than $100 nor more than $1,000; for malicious mischief to property, was, under our former statutes, regulated in many cases by the value of the property, generally not to exceed three times its value, is under the Revised Statutes from $10 to $2,000. That in criminal cases, the legislature, both for the protection of society and of the individual offenders, should place a limit

on the verdict of a jury, and yet exemplary damages, which are allowed only in those civil cases which are *quasi*-criminal in their nature, and then as a fine or penalty, should rest in the discretion of a jury, whose verdict in a great majority of cases far exceeds the highest fines allowed by law in criminal cases, is an inconsistency which may well arrest the attention of the legislative and judicial minds. By analogy, in the absence of a more definite rule, we might look to the example of the legislature in those cases in which they have fixed a minimum and maximum amount proportioned to the actual injury received.

What was said by this court in Railroad Co. *v.* Nichols, decided at Austin term, 1882, is applicable in this case, that "exemplary damages, when allowed, should bear proportion to the actual damages sustained" (Mobile & Montgomery R. R. Co. *v.* Ashcraft, 48 Ala., 33); and that, "in this cause the actual damages assessed by the jury were $2,000, a sum probably not excessive under the facts of the case; but the exemplary damages were assessed at $8,000, which to us seems so clearly excessive when contrasted with the sum found for actual damages, and considered with reference to the facts of the case, that we are forced to the conclusion that it was the result of passion or prejudice, stimulated, perhaps, by the course pursued on the trial."

In that case the proportion between the actual and exemplary damages was as two bears to eight; here it is nearly as one to twelve.

In this connection it is deemed proper to say that the case of R. R. Co. *v.* Randall, 50 Tex., 254, so often cited to sustain large verdicts, was one of actual, not exemplary damages.

In our opinion the verdict in this case is excessive, and should have been promptly set aside.

For the errors above indicated, the judgment below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 8, 1882.]