Creve Coeur Lake Ice Co. v. Tamm.

---

## CREVE COEUR LAKE ICE COMPANY, a Corporation, Respondent, v. MAX TAMM, Appellant.

**St. Louis Court of Appeals, November 5, 1901.**

1. **Contract: REASONABLE DILIGENCE: DAMAGES.** A party to a contract is required to use reasonable diligence to mitigate the damages caused by his obligor's breach.

2. ——: ——: ——. And if the vendor of a merchantable commodity fails to furnish the goods according to promise, it is incumbent on the vendee to provide himself, as cheaply as he conveniently can from the most accessible sources, and thus lighten the loss, and his recovery will be curtailed by the sum which thus might have been saved.

3. **Damages: REMITTITUR: PRACTICE, TRIAL: EVIDENCE.** The right exists in this State for the trial courts to either direct or receive a release of excessive damages given by a jury as a condition of refusing a new trial, in cases where the amount of excess is exactly calculable from the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft,* Judge.

AFFIRMED.

STATEMENT OF THE CASE.

Action to recover damages for the breach of a written contract by which the defendant and one Theodore Tamm, then partners under the firm name of Tamm Ice & Cold Storage Company, agreed to furnish the plaintiff a certain quantity of ice during the months of April to November, inclusive, 1891. The contract was a written one dated April, 6. By it the Tamm Ice & Cold Storage Company covenanted to supply the Creve Coeur Lake Ice Company with one hundred and forty-five cars of ice, of not less than eighteen or more than twenty tons each, to be delivered f. o. b. cars at Tamm's switch, said cars to be divided proportionately through the months, according to the number of cars stipulated for each month.

A schedule of prices to be charged for the ice during the different months was included and ranged from two dollars and fifty cents per ton to three dollars and thirty cents per ton in July, August and September.

The first party was to furnish artificial ice of as good quality as was selling in the market. The concluding clause of the contract was: "The party of the second part (namely the Creve Coeur Lake Ice Company) agrees to buy of the party of the first part the aforementioned amount of ice, at the prices named and on the aforementioned conditions and to pay for the same the tenth day of the following month after delivery. This contract terminated December 1, 1891."

Deliveries were made pursuant to the contract without dispute arising until the tenth day of June; but on June 11, the following letter was sent to and received by the plaintiff:

St. Louis, June 11, 1891.

"Creve Coeur Lake Ice Co.,

"O. C. Shedd, Manager, City.

"Gentlemen: Inasmuch as you have failed to comply with agreement or contract of April 6, 1891, we hereby notify you that we will not deliver any more ice under it, and therefore you will please consider the contract no longer in force.

"Yours truly,

"TAMM ICE & COLD STORAGE COMPANY,

"MAX TAMM."

The cause, or pretext, for this abrupt attempt by the defendant to end the contract, was a charge that the plaintiff had broken it by failing to pay for the May deliveries on or before the tenth day of June. According to the stipulation, thirteen cars were to be taken in May, but it seems only ten were taken. The weather being somewhat cool during the early part of that month, plaintiff notified defendant that if it was satisfactory it would take more cars towards the last of the month, but would complete the full quota for the month. These three cars were ordered about the twenty-sixth but were not delivered, the plaintiff says, because the defendant claimed something was the matter with his machinery. At all events, they were not received.

On the first of June the Tamm Ice & Cold Storage Company sent to plaintiff a statement for ten carloads of ice actually furnished in May. Then on June 10, the day when payment should have been made, a second invoice was received by plaintiff about one o'clock in the afternoon, charging for thirteen carloads of ice as though the missing three cars had actually been delivered. This made two different statements of what was due from the plaintiff on the contract for May.

The testimony of Mr. Shedd, plaintiff's manager, is that

he could not at that time call up Tamm as it was after office hours, but saw him the next morning in regard to the matter. Meanwhile, it was necessary to check up from its books the number of carloads of ice received by plaintiff during May and their prices. The next day Shedd called up Tamm over the telephone, telling him plaintiff had received two statements and asking him which one he expected to collect. He replied he would come down in the afternoon, but in fact did not come. Instead, he wrote the above letter declining to deliver any more ice. On the twelfth of June, Shedd met him and a conversation ensued in which Tamm did not deny he had agreed to call on Shedd in reference to the two conflicting statements. Tamm said he did not come but cancelled the contract. He insisted, however, on collecting the last statement, including the price of the three carloads of ice not furnished, and plaintiff paid it. It was a charge in excess of the amount which would have been due even if the three cars had been furnished, in the sum of thirty-eight dollars and sixty-three cents. Tamm concedes that in his own evidence.

On the same day (June 12) Shedd addressed a letter to the defendant of some length, going over the facts, asserting that the plaintiff had not committed a breach of the agreement and notifying defendant it considered the same still in force and would hold him responsible for any damages caused by his failing to comply with it. No answer was received.

On June 18, plaintiff again wrote the defendant as follows:

"June 18.

"Tamm Ice & Cold Storage Company, St. Louis, Missouri.

"Gentlemen: We beg to inform you that we have received no ice from your company as per our contract, for the past week, and that some of our subcontractors for artificial ice are calling on us for the same, and that we are unable to

supply them unless you carry out your agreement with our company and furnish us as per contract of April 6, 1891, for which we are holding.                    Yours truly,

"CREVE COEUR LAKE ICE Co.,

"O. C. Shedd, Manager."

And again on June 23, the latter letter being unimportant.

Defendant answered June 24, in which among other things he said that in view of the claim made by plaintiff that the Tamm Ice & Cold Storage Company had cancelled the contract because the prices stated in it were too low, he offered to sell the plaintiff the quantities of ice at the prices and on the conditions stated in that contract, commencing June 25, conditioned, on the payment for each month's delivery being made the tenth of the succeeding month without fail.

On June 25, the Creve Coeur Lake Ice Company replied to that offer by saying it was ready to receive ice under its agreement of April 6, whenever the Tamm company was ready to resume shipments, and had never considered the contract cancelled.    It also requested advice as to when the Tamm company would start shipments.

Afterwards Tamm personally declared that he would not ship any more ice under the contract.

The testimony tends to prove that the prices of ice were much higher during the summer than those stipulated in the contract between the parties.    About two thousand one hundred and seventy tons were called for by that contract, which defendant failed to deliver.    Plaintiff, to meet the requirements of its trade, purchased elsewhere—what it could get in St. Louis and the remainder in other markets.    Artificial ice could not be procured, so natural was bought.    The amount paid in sup-

plying the deficiency, over and above what it would have cost plaintiff under its contract with the defendant was about three thousand four hundred and fifteen dollars. The jury returned a verdict for four thousand, three hundred and thirty-five and seventy-two one-hundredths dollars, from which plaintiff remitted nine hundred and fifty-eight and forty-five one-hundredths dollars.

*Given Campbell* for appellant.

(1) The court erred in giving instruction number 2. The instruction assumes that plaintiff was, by reason of the failure and refusal of the defendant to furnish ice under the contract of April 6, compelled to purchase, and did purchase, such ice elsewhere, when, as a matter of fact, there is absolutely no evidence tending to show that plaintiff made any purchases of ice specifically to fill the undelivered part of this contract. (2) In the second place, this instruction is erroneous, in that it is misleading, since the evidence clearly shows that nearly all of the ice plaintiff got that season came from its own house at Clear Lake, Iowa, and was its own ice, which it had put up in that house the previous winter. (3) In the third place, the instruction is erroneous, because of the use of the term "elsewhere." If the defendant had broken the contract and plaintiff had thereby been compelled to buy ice to take care of said contract, it would have had to buy it not "elsewhere," or "anywhere," but at the nearest available market. (4) The verdict of the jury rendered is so extraordinarily excessive that it is certain that the jury disregarded the evidence and mistook the law, and the error can not be cured by remittitur. Koetz v. Bleckman, 46 Mo. 320; Doty v. Steinberg, 25 Mo. App. 328; Sheedy v. Brick Works, 25 Mo. App. 527.

*Dickson & Smith* for respondent.

(1) The word "elsewhere," as used in the plaintiff's instruction number 4, is not erroneous or misleading, nor was it the duty of the court to have defined its meaning, or that of any other word used. Coal Co. v. Brick Co., 66 Mo. App. 302; Warder v. Henry, 117 Mo. 530. (2) Plaintiff's voluntary remittitur of $958.45 reduced the judgment to $3,-377.27—less than the amount claimed in the petition. This being an action on the contract, such remittitur cured any objection to the verdict on the ground that it was in excess of the amount claimed in the petition. Cook v. Railroad, 63 Mo. 397; Peck v. Childers, 73 Mo. 484; Higgs v. Hunt, 75 Mo. 106; Crawford v. Doppler, 120 Mo. 362; Milling Co. v. Walsh, 24 Mo. App. 97; Sherman v. Printing Co., 29 Mo. App. 31. (3) Where goods have been bought for the purpose of re-sale, and there is no market in which the buyer can readily obtain them, he may elect to fulfill his contracts and for that purpose go into the market and purchase the best substitute obtainable, charging the seller with the difference between the contract price of the goods, and the price of the goods substituted. 2 Benjamin on Sales, *887, sec. 1235 (Notes by Kerr); Hinde v. Liddell, L. R. 9, Q. B. 473. (4) A positive, absolute refusal by one party to carry out a contract, or such conduct on his part as incapacitates him from performance, is in itself a complete breach of the contract on his part, such as dispenses the other party from the useless formality of tendering performance of the condition precedent. 21 Am. and Eng. Ency. of Law, p. 652, and cases; Beach on Modern Law Contracts, sec. 1714.

GOODE, J.—Exceptions were saved to rulings on the instructions and to the amount of damages awarded by the verdict, which was claimed to be so excessive that a remittitur could not cure the error. Certain theories of defense that

the court ignored in submitting the case, are pressed and will be considered in their appropriate order.

The first is that plaintiff has no cause of action unless it bought ice from other persons for the specific purpose of supplying what the defendant failed to deliver; that this essential condition is unsatisfied if purchases were made generally, without definite reference to the insufficiency of its stock occasioned by the Tamm company's default. If plaintiff was compelled by defendant's breach of his obligation to purchase more ice at higher prices than it otherwise would have done, it clearly sustained actionable injury whether any particular lot was engaged to take the place of what defendant should have furnished, or not. The important fact is, that the amount bought and the sum paid were larger than they would have been if defendant had done his duty. The testimony to show such was the case is uncontradicted and positive. Plaintiff's purchases equaled or exceeded what defendant should have delivered and were caused by defendant's failure to deliver. The instructions fairly based plaintiff's right to recover on a finding that it was compelled to buy elsewhere by defendant's failure, and limited the amount of the verdict to the excess paid for such purchases over the prices stipulated in the agreement between the parties to this action, provided such excess did not exceed the highest market price in St. Louis. No right to recover for ice taken by plaintiff from its own storehouses and sold here, was submitted. It is true, plaintiff shipped and disposed of a large quantity of ice from its northern stores. But we are unable to see how that precluded it from claiming damages for a breach of the contract, if it was damaged thereby. That it was, is conclusively established by the fact that it was forced to buy ice from other persons at higher prices to supply its trade. The court did not err in refusing the first, second and seventh of the defendant's

instructions (all too long to be quoted) which directed a verdict for the defendant, if plaintiff supplied itself with ice, in lieu of that called for by the contract, out of its own stock, because the proof was conclusive that its own stock was insufficient and needed to be replenished by outside purchases.

The third refused instruction related to the letter written by the Tamm company on the twenty-fourth day of June, in which Tamm stands by his annulment of the contract, but defends himself against the accusation that he had cancelled it because the prices agreed on were too low, by offering to sell the plaintiff the same quantity of ice "at the prices and on the conditions stated in that contract," provided payment for each month's delivery would be made on the tenth day of the succeeding month. The instruction was to the effect that if the jury found an offer was made by the Tamm company and plaintiff neglected to avail itself of the opportunity so afforded to get ice at those prices, defendant was not liable for failure to deliver during August, September, October and November. This proposal was absolutely identical with the original agreement—that agreement over again—an assertion that it had been annulled, and an offer to renew it. Plaintiff replied that it had not been annulled, was still in force and that ice would be received under it whenever offered.

A party to a contract is required to use reasonable diligence to mitigate the damages caused by his obligor's breach. If the vendor of a merchantable commodity fails to furnish the goods according to his promise, it is incumbent on the vendee to provide himself as cheaply as he conveniently can from the most accessible sources and thus lighten the loss; and his recovery will be curtailed by the sum which might thus have been saved. Consolidated Coal Co. v. Mexico Fire Brick Co., 66 Mo. App. 296; Warren v. Stoddart, 105 U. S. 224; Wicker v. Hoppock, 6 Wall. 94; Russell v. Butterfield, 21

Wend. 300; Deere v. Lewis, 51 Ill. 254.

We would be reluctant to push the rule to the limit it was carried in Lawrence et al. v. Porter et al., 63 Fed. 62. The defendants in that case had, without cause, refused to fill a contract to furnish the plaintiffs lumber on ninety days credit, but proffered to do so for the same prices in cash; which proposition the plaintiffs declined and were denied a recovery because they had not taken advantage of the defendants' said offer, to mitigate the damages occasioned by the breach. It is going a great way to require an obligee to show that much solicitude for a defaulting obligor and would tend, in our judgment, to encourage a disregard of covenanted duties and arbitrary refusals to stand by onerous bargains. Besides, it savors of oppression to compel a performing party to a contract to enter into new relations with a person who has willfully broken his obligation, solely to protect the latter from loss. What security is there that the second agreement will not be treated as lightly as the first, or by what authority can such a quasi substitution of one contract for another be compelled? That is making the way of transgressors easy and of the righteous hard. The doctrine declared in Lawrence v. Porter, supra, has been rejected by some respectable courts. Cook Mfg. Co. v. Randall, 62 Ia. 244; Havemeyer v. Cunningham, 35 Barb. 514. But if we defer to the rule because sanctioned by high authority, the Creve Coeur Lake Ice Company's conduct amounted to a compliance with it. The Tamm company's renewed tender of ice was, as has been said, tantamount to an offer to deliver it according to the terms of the first undertaking, to which plaintiff responded that it was willing to receive ice on those terms. It follows that plaintiff did not fail to avail itself of this chance to mitigate its damages. Appellant insisted, as a condition on which he would furnish ice, that the Creve Coeur company should concede the cancellation of

the other agreement.   This was flagrantly unjust; for such a course, instead of mitigating the damages, would have been a renunciation of respondent's contractual rights and of any damages for their breach.

Another assignment is that if the contract remained in force, respondent was bound to order shipments of ice through the summer and autumn months as it needed them.   There was no such stipulation, but appellant contends the course of dealing followed by the parties was that way.   The point might be well taken if both sides had continued to recognize the agreement as still in force; but as appellant formally repudiated it and declared he would ship no more ice, it would have been useless for respondent to direct shipments, and the law does not require useless acts.   State Sav. Bank Ass'n v. Kellogg, 52 Mo. 583; Heralson v. Mason, 53 Mo. 211.   Even after the letter of June 24, in which defendant claimed to be willing to resume delivery on the original terms, Tamm told Shedd he did not intend to furnish any more ice under the contract.   Shedd so testifies and Tamm scarcely denies it.   In fact, the latter nowhere claims that he would have furnished ice after that letter, but merely says he was in a position to do so.

No error was committed in refusing to charge the jury, as requested in appellant's third refused instruction, to find a verdict for defendant on the ground that no particular shipments were ordered during August, September, October and November, or in refusing other instructions which propounded the same theory.

Instructions were given at the request of the plaintiff which properly submitted the issue. whether plaintiff had been derelict in paying for the May installment of ice, and if it had been, whether the Tamms waived the default.   Those issues were found against the defendant and we think the find-

ing was well supported by testimony.

Complaint is made of a charge to the effect that respondent could recover if it bought ice *elsewhere* than from the Tamm company to supply its trade. Appellant contends the word "elsewhere" was misleading, as no recovery was permissible except for higher prices paid for such ice as plaintiff purchased in St. Louis to supply any deficiency caused by defendant's default, or, if not found in St. Louis, then in the nearest available market. This argument has no force except in so far as it relates to the measure of damages and appellant concedes that the charge on that subject was sound. Respondent had a right to buy where it pleased, but could recover no more than the difference between what it agreed to pay appellant and the lowest price in the nearest market where the shortage in its stock could be made good.

An instruction was given which restricted the award of damages in case of a finding for plaintiff to the difference between the prices fixed for the several months by the contract and the amount actually paid by plaintiff to outside persons for ice during those months, provided such amount did not exceed what was shown to have been the market price in St. Louis for similar ice in carload lots. That direction was more favorable to appellant than he could justly have asked; for it made the St. Louis market the sole criterion of damages, whereas, the respondent might legally have bought in other places if unable to supply itself there. Cobb v. Whitsett, 51 Mo. App. 146.

While it is admitted the law was properly declared as to the measure of damages, it is asserted the jury disregarded the instructions given to them. This brings us to the consideration of the action of the court in permitting plaintiff to enter a relinquishment of part of the assessment in its favor and then overruling appellant's motion for a new trial.

Whether the practice of ordering or accepting a remission of some portion of the damages awarded by a verdict when the allowance is excessive, instead of granting a second trial, is logically defensible or strictly consistent with the fundamental principle of our jurisprudence that the court shall declare the law and the jury find the facts, is no longer open to debate on elementary grounds or for any purpose except to determine the limit of the court's power, as defined by precedents, to reduce the verdict. The constitutionality of the procedure has been much argued by legal writers, and eminent jurists have arrayed themselves on either side of the question. But the trend of opinion has been steadily towards upholding the court's right to thus interfere, as a salutary aid to the administration of justice and no real encroachment on the province of the jury. The theory on which it is supported is well expounded in Arkansas Valley Land Co. v. Mann, 130 U. S. 69. The practice has long been recognized as proper and has become a well-settled rule of procedure. in this State, and generally, wherever the common law prevails, although able judges and writers continue now and then to raise doubts as to its constitutionality.

The remittitur in this case was entered in the trial court and, so far as I know, the prerogative of our circuit courts to either direct or receive a release of excessive damages given. by a jury, as a condition of refusing a new trial, has never been seriously questioned by the appellate tribunals; in fact there is a direct decision that the right of a *nisi prius* court to so interfere is beyond controversy (Chitty v. Railroad Co., 148 Mo. 64); although whether the same power of revision is as broadly possessed by courts of error has been much disputed. Undoubtedly they have and constantly exercise the right in cases where the amount of the excess is exactly calculable from the evidence. Keene v. Schedler, 92 Mo. 516;

Warder v. Henry, 117 Mo. 530; Crawford v. Doppler, 120 Mo. 362; State ex rel. v. Hope, 121 Mo. 32. But a wide difference of opinion exists as to their duty when unjust damages have been awarded in instances where there is no positive criterion for determining what the damages ought to be; that is, in actions for personal injuries, other cases sounding in tort and, we suppose, those in contract for unliquidated and uncertain damages. Loyd v. Railroad, 53 Mo. 509; Waldheir v. Railroad, 87 Id. 37; Furnish v. Railroad, 102 Id. 438; Nicholds v. Plate Glass Co., 126 Mo. 55; Burdict v. Railroad, 123 Id. 221 (in which the authorities on the subject are reviewed); Rodney v. Railroad, 127 Id. 676; Hollenbeck v. Railroad. 141 Id. 97; Chitty v. Railroad, supra. All those decisions concede the trial court's power to permit such an amendment of the verdict and thereupon refuse a new hearing, because the trial judge is largely concerned with the facts. He must review the finding on them and set it aside if unsupported, in his opinion, by the weight of evidence.

But there are exceptional cases in which an excessive verdict can not be thus cured even at *nisi prius*. If the jury were erroneously charged concerning the measure of damages and, in obedience to the court's instruction, included in their assessment of damages improper elements, and it is impossible to ascertain precisely how much the verdict was increased thereby, a remittitur is insufficient to redress the error, which can only be done by granting a new trial. Instances of this kind were Wright v. Jacobs, 61 Mo. 19; Slattery v. St. Louis, 120 Mo. 183; Hunter v. City of Mexico, 49 Mo. App. 17. Or when the amount assessed is so glaringly unauthorized by any evidence, so outrageous and conscienceless as to compel a conviction that the jury were poisoned with prejudice and inflamed with resentment against the losing party, and therefore incapable of impartially weighing the evidence on the various

issues submitted to them, their verdict must be wholly set aside. They are proven by the event to have been dominated by sentiments which unfitted them to participate in the administration of justice and this would have been ground for setting aside the array in the first place had their state of mind been known. As they gave no proper attention to the evidence or the law bearing on the question of compensation, so presumably, they gave none to what bore on the main issues. For such reasons a remittitur was held inadequate in the following cases: Koeltz v. Belckman, 46 Mo. 320; Doty v. Steinberg, 25 Mo. App. 328; Sheedy v. Union Press Brick Works, Id. 527. The record in this case contains nothing that impugns the motives and feelings of the jury that tried it. We have simply before us the common instance of an excessive verdict, such as have over and over again been held cured by a release of part of the sum awarded. Why it was too large does not appear; probably from an addition of interest to the damages found to have been sustained; nor is this material in the absence of disclosures to convince us it was induced by passion or prejudice. As corrected, the verdict was satisfactory to the judge who tried the cause and he properly refused another trial.

We are unwilling to hold that the omission to limit the maximum of damages which might be given, to the sum laid in the petition, in the instruction on the measure of damages, renders a reversal imperative. Appellant concedes the instruction was otherwise correct. It properly informed the jury for what purchases of ice plaintiff was entitled to recover in case the issues were found for it and the mode of ascertaining the sum they should allow. The instruction reads as follows:

"If the jury find for plaintiff they will assess its damages for the failure to deliver ice during any of the months mentioned in the contract, which should have been furnished plaintiff by defendants under said contract, and which was not so

furnished, and was purchased by plaintiff elsewhere at the dif-. ference between the price fixed for said month by said contract and the amount actually paid by plaintiff during said month for such ice, provided, such amount shall not exceed what the jury shall believe under the evidence to have been the lowest market price in St. Louis for such ice, in carload lots, less switching charges of two dollars per car at any time during such month, and their verdict shall be for the aggregate of the amounts that may be so found by them for the months mentioned in said contract. The jury are instructed to ignore the months of April and May."

No complaint regarding that charge is made except the failure to direct the jury not to assess the damages at a sum larger than plaintiff prayed. It is ancient law that a verdict beyond the demand is bad and ground for another trial. Carr v. Edwards, 1 Mo. 137; Maupin v. Triplett, 5 Id. 422. But the rule is also ancient that such a verdict may be corrected by a remittitur. Johnson v. Robertson, 1 Mo. 615; Hoyt v. Reed, 16 Id. 294; Peck v. Childers, 73 Id. 484; Higgs v. Hunt, 75 Id. 766; Furry v. Stone, 1 Yeates (Pa.) 186; Lewis v. Cobb, 1 Har. & M. 159; Jewell v. Gage, 42 Me. 247; Barker v. Rose, 5 Hill (N. Y.) 77. That such an omission is reversible error has been said in one or two opinions where the remark was *obiter,* because the error was ruled harmless, inasmuch as the verdicts fell inside the sum demanded. Respectable courts have held that it is improper to fix such a limit, on the theory that the jury may be led to believe the evidence will support them in giving damages to the maximum, when in truth such an assessment would be excessive. Bryan v. Acre, 27 Ga. 87; Gasscock v. Shell, 57 Tex. 224; Willis v. McNeil, Id. 465; Fordyce v. Nix, 58 Ark. 136. Without adopting that view, we hold the instruction on the measure of damages was not fatally vicious on account of the omission of

Northwestern Sav. Bank v. International Bank.

a limit corresponding to the prayer of the petition and that the excessive verdict was subject to be corrected notwithstanding that imperfection, if it was one, in the usual mode, by a remission of such part of the damages as in the opinion of the learned circuit judge gave the plaintiff no more than just compensation for its loss.

Finding no material error in the record the judgment is affirmed. All concur.