SMOOT v. KANSAS CITY, Appellant.

Division Two, March 6, 1906.

1. **NEGLIGENCE: Amount of Damages: Limited by Petition.** An instruction which permits the jury to award plaintiff for medical services an amount in excess of the damages for such services fixed by the petition is erroneous. And where the petition fixes the damages for loss of time at a definite sum the instruction is erroneous if it does not limit the amount of recovery for loss of time.

2. ———: ———: **Unlimited Instruction: Remittitur.** An instruction, erroneous in not limiting the amount of plaintiff's recovery for loss of time to the amount claimed in the petition, may be cured by a *remittitur*, in either the trial or appellate court, where the court can reasonably estimate the excess in the verdict or judgment and it is apparent that no injury will be done defendant by entering such *remittitur*. But where it is impossible to ascertain precisely how much the verdict may have been increased by the erroneous instruction, the error cannot be cured by a *remittitur*. And in determining whether or not injury would be done by a *remittitur*, the court

194 Sup—33

will consider the evidence, especially where it is sharply contended that the verdict is excessive, and the case is by no means a one-sided one, and the instruction is a roving one, permitting the jury to speculate as to the damages.

3. **PHYSICIAN: Witness: Observation.** Observations and information acquired by a physician after the relation of physician and patient has been established are not competent; but observations made by him before that relation was established are competent, and a physician, in the employ of defendant, can testify whether or not, when he arrived on the scene of the accident, plaintiff was spitting blood, if he saw that before he made any examination of plaintiff and before he undertook, as a physician, to determine by observation his condition with a view of treating him.

4. **NEGLIGENCE: Weight of Evidence.** This court will not convict the trial court of error for refusal to give an instruction withdrawing one element of injury or damages from the jury on the ground that there was no evidence to sustain it, if there was some evidence on the subject. It is for the trial court, and not the court of review, to award a new trial on the ground that the verdict was contrary to the preponderance of the creditable evidence.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan*, Judge.

REVERSED AND REMANDED.

*Edwin C. Meservey, W. H. H. Piatt* and *James W. Garner* for appellant.

(1) The court erred in giving instruction 4 upon the part of respondent, because said instruction disregards the prayer for damages in respondent's petition, because it permits respondent to recover for loss from his means of livelihood without any limitation as to the amount when the petition places the same at $250, and permits a recovery for surgeon's hire for $350, when the petition limits the same to $200. Maupin v. Triplett, 5 Mo. 423; Hayton v. Hope, 3 Mo. 54; Tilford v. Ramsey, 43 Mo. 410; Pope v. Salsman, 35 Mo. 362; Reed v. Crane, 89 Mo. App. 670; Carter v. Shot-

well, 42 Mo. App. 663; Wright v. Jacobs, 61 Mo. 19; Crews v. Lackland, 67 Mo. 619; Waddingham v. Hulett, 92 Mo. 528; Lester v. Railroad, 60 Mo. 265. (2) There can be no *remittitur* entered in this case because of the excess, if any, allowed on the item of loss of time which cannot be calculated from the evidence. Creve Coeur Lake & Ice Co. v. Tamm, 90 Mo. App. 202; Slattery v. St. Louis, 120 Mo. 183; Hughes on Instructions (Ed. 1905), sec. 106. (3) The court erred in refusing instruction 11 asked by the appellant which withdrew from the jury, in estimating damages, any consideration of hernia, for the reason that there was not sufficient evidence upon which to base the same, and there was no evidence connecting it with the injury. Railroad v. Railroad, 118 Mo. 599.

*H. J. Latshaw, Jr., Chas. E. Yeater* and *E. M. Perdue* for respondent.

(1) The contention of appellant is that the court erred in excluding the testimony of Dr. Monahan, in regard to the doctor's knowledge and opinion relative to respondent's injuries and especially concerning the doctor's knowledge of whether or not respondent was spitting blood while under the doctor's observation and examination at the scene of the accident. The court did not err in sustaining respondent's objections to this testimony. Sec. 4659, R. S. 1899; Mellor v. Railroad, 105 Mo. 455; Gartside v. Ins. Co., 76 Mo. 446; James v. Kansas City, 85 Mo. App. 20; Smart v. Kansas City, 91 Mo. App. 586; Hayworth v. Railroad, 94 Mo. App. 215; Kling v. Kansas City, 27 Mo. App. 231; Arnold v. City, 85 S. W. 106. (2) On the opening day of this term of this court, respondent filed a motion on diminution of record, asking this honorable court for a writ of *certiorari*, directed to the clerk of the circuit court of Pettis county, ordering him to send to the Supreme Court the amended petition upon which this case went

to trial. Owing to the fact that this motion has not yet been acted upon by this honorable court, and owing to the fact that the time is about up within which respondent is permitted, under the law, to file this brief and argument, respondent will now reply to appellant's contention that appellant's instruction on the measure of damages was not in harmony with the allegations on the estimates of damage in said amended petition. Taking it for granted, therefore, that the petition which appellant claims this case went to trial upon, contained the statements he alleges were in said petition, viz: That said petition placed a limitation of $200 upon the amount respondent has obligated himself for doctors' and surgeons' care, and $250 for loss from his means of livelihood, while said instruction limited said doctors' bill to $350 and placed no limit on the amount for time lost. Respondent's reply is: If all this had been true, respondent would have had the right, upon motion at the close of the trial, to have amended his petition to correspond with the evidence and said instruction, and a refusal of the trial court to allow respondent to so amend under the conditions would have been held by this court to be an abuse of discretion. Moreover, with the permission of this court, respondent has the right, under the practice, to amend his petition in the Supreme Court so as to make said petition correspond with the evidence and said instruction. Wherefore, respondent hereby asks permission to make said amendment, providing, of course, this court finds that the petition set forth by appellant is the petition upon which trial was had, and providing, also, that this honorable court finds said discrepancy, if any, to be material. If, for any reason, this court does not see fit to grant respondent's said request to amend, then respondent's reply to this contention of appellant is: The highest computation that the jury could have put upon the time lost, under the evidence, would not equal the amount claimed in respondent's petition. Respondent is, therefore, un-

able to see how appellant could have been injured, even if all that appellant claims be true. In regard to the item on doctors' bills, suffice it to say, that if the petition placed the damages on that item at $200, and the instruction at $350, there is no way of figuring by which appellant could have been damaged by said mistake for over the sum of $150. This amount, or any other amount that this court may in its wisdom, and its sense of equity, decide that respondent should remit, will be gladly and speedily complied with. Magrane v. Railroad, 183 Mo. 119; McLean v. Kansas City, 81 Mo. App. 72. Furthermore, it is very doubtful if appellant is in a position to now raise this objection. Freirsmuth v. McKee, 86 Mo. App. 64. Moreover, the judgment in the case at bar is so plainly for the right party, that even though the court may believe some error crept into the instruction above referred to, we believe this court will, in accordance with its past rulings, decide that the judgment should be affirmed, being so clearly and palpably for the right party. Magrane v. Railroad, 183 Mo. 119; Cass County v. Bank, 157 Mo. 133; Jones v. Brownlee, 161 Mo. 258; King v. King, 155 Mo. 406.

FOX, J.—This cause is here upon appeal from a judgment of the Pettis Circuit Court against defendant in the sum of five thousand dollars. The amended petition, upon which this proceeding rests, was filed at the May term, 1902, of the Pettis Circuit Court, and is as follows:

"For cause of action against defendant, plaintiff states that on July 25th, 1900, and at all times herein mentioned, defendant was and still is a municipal corporation of the first class, of the State of Missouri, organized and existing under a special charter as by law provided, with all the powers, privileges, and liabilities incident thereto.

"That at all said times, and for a number of years prior thereto, Brook street and especially that portion

thereof hereinafter referred to, was a public street and thoroughfare of and within said defendant city, and at all said times there was a public sidewalk on the west side of said Brook street, and especially that portion thereof in front of number 2235 Brook street, and said sidewalk was, with the knowledge, consent, and invitation of defendant, used as a general public sidewalk for the purposes of travel, at all said times.

"Plaintiff further states that on said 25th day of July, 1900, and for a long time prior thereto, defendant carelessly and negligently maintained said sidewalk on said Brook street, and especially that portion thereof in front of said number 2235 Brook street, namely, about 273 feet south of the southwest corner of said Brook street and Twenty-second street, and allowed the same to be maintained and to remain in a dangerous and defective condition in this, to-wit: The stringers of said sidewalk at said point were rotten and decayed and were broken, dilapidated and insecure. The boards of said sidewalk at said point, and for several feet on both sides thereof, were loose, decayed and broken, and some of them entirely missing, and defendant carelessly and negligently failed to maintain barriers, light, or other warnings at or near said point of said sidewalk to warn pedestrians of said defect and dangers at said time, namely, said July 25th, 1900, and for a long time prior thereto.

"Plaintiff says that defendant knew of said defects, and all of said defects on said July 25th, 1900, and for a long time prior thereto, or by the exercise of ordinary care and caution on its part, could have known thereof at all said times, and in reasonable time to have remedied said defects prior to said July 25th, 1900, by the exercise of ordinary care and caution, but defendant carelessly and negligently failed to do so.

"Plaintiff states that on or about said July 25th, 1900, at about the hour of 9 p. m. thereof, he was lawfully walking in a southerly direction over and upon

said sidewalk on said west side of Brook street, and as he reached a point of said sidewalk about said 273 feet south of the southwest corner of said Brook street and said Twenty-second street, the same being directly in front of said number 2235 Brook street, he stepped his left foot in a hole in said sidewalk, where two of said boards and parts of another one of said boards were out and missing, owing to the defects above set forth, and he was thereby thrown violently into said hole and upon said sidewalk and against said sidewalk upon the ground, greatly injuring him in this, to-wit: Plaintiff's left leg and knee and left arm and elbow were wrenched and bruised; three ribs of the left side of plaintiff's body were fractured; plaintiff's back and spine and spinal cord were wrenched and his entire nervous system shocked; and plaintiff's heart and lungs were injured, but plaintiff does not know, and for that reason cannot state the nature of said injuries to his heart and lungs; and plaintiff was ruptured in his left side, producing hernia.

"Plaintiff says that all of said injuries are permanent, and that on account of said injuries he has been compelled to obligate himself for large sums of money for doctor's and surgeon's hire, namely, $200, and will so long as he lives be compelled to obligate himself for large sums of money for said items, on account of said injuries; and that, on account of said injuries, plaintiff has been compelled to lose time from his means of livelihood, to his damage in the sum of $250, and that he will, so long as he lives, be compelled to lose time from his means of livelihood, on account of said injuries; and plaintiff further says that, on account of said injuries he has suffered, and will so long as he lives, suffer great physical pain and mental anguish, all to his damage in the sum of twenty-five thousand dollars, for which amount, together with costs, he asks judgment against the defendant."

To this petition defendant on the 16th of June, 1902, filed the following answer:

"Comes now the defendant, Kansas City, and for its answer to the petition of plaintiff admits that it is a municipal corporation duly organized and existing according to law, but denies each and every other allegation in said petition contained.

"For a further answer to said petition, defendant states that at the time and place where plaintiff claims to have been injured he so carelessly and negligently conducted and demeaned himself that the injuries, if any, received by said plaintiff as alleged in said petition were caused and directly contributed to by his own fault and negligence.

"Wherefore, defendant prays that it may go hence without day and have judgment for its proper costs in this behalf sustained."

It is not essential to the proper determination of the legal propositions involved in this proceeding to burden this opinion with a detailed statement of the testimony developed at the trial. It is sufficient to say that plaintiff introduced evidence tending to show the defective sidewalk and that by reason of such defects he was injured. Also testimony tending to show the nature and character of such injuries. On the part of the defendant the testimony tended to contradict that of the plaintiff, and that the plaintiff did not receive the injuries complained of and that whatever injuries were received they were not of a permanent nature.

The testimony to which proper objections and exceptions were presented, as well as the instructions complained of, will be given due consideration in the course of the opinion.

Upon the submission of this cause to the jury upon the evidence and instructions of the court, they returned a verdict finding the issues for the plaintiff and assessing his damages at the sum of $5000. Motions for new trial and in arrest of judgment were timely

filed and by the court overruled, and judgment entered in accordance with the verdict. From this judgment the defendant prosecuted his appeal to this court and the record is now before us for review.

OPINION.

Upon this record the complaints of appellant may thus be briefly stated: .

1. That the trial court erred in giving instruction numbered 4.

2. The court erred in admitting evidence of subsequent repairs upon the alleged defective sidewalk.

3. The court erred in refusing instruction numbered 11, which withdrew from the consideration of the jury the question as to whether or not plaintiff was suffering from hernia as a result of the injuries received by him, at the time of the accident.

We will treat these assignments of errors in the order as herein indicated. Instruction numbered 4 complained of is as follows:

"The court instructs the jury that if you find for plaintiff, then in estimating the amount of damages to be awarded him, you may take into consideration such sums of money, if any, that you may find and believe from the evidence plaintiff has obligated himself for on account of doctor's and surgeon's hire in treating the injuries, if any, in evidence, and allow him such an amount, not to exceed $350, for said items as would be reasonable compensation for said services, if any; and if you further find and believe from the evidence that plaintiff will in the future, on account of said injuries, if any, be compelled to pay out or obligate himself for doctor's or surgeon's care, you may also take that fact into consideration, and allow him therefor such an amount as, under the evidence, would be reasonable compensation for said future services, if any; and if you further find and believe from the evidence that

plaintiff has, on account of said injuries, if any, been compelled to lose time from his means of livelihood, you may also take that fact into consideration, and allow him therefor such an amount as, under the evidence, would reasonably compensate him for said loss of time, if any; and if you find and believe from the evidence that plaintiff will in the future be compelled, on account of said injuries, if any, to lose time from his means of livelihood, you may also take that fact into consideration, and allow him such a sum therefor as will, under the evidence, reasonably compensate him for said future loss of time, if any.

"And if you further find and believe from the evidence that plaintiff has, on account of said injuries, if any, suffered physical pain or mental anguish, you may take that fact into consideration, and allow him such an amount therefor as, under the evidence, will reasonably compensate him for said physical pain, if any, or mental anguish, if any; and if you further find and believe from the evidence that plaintiff will in the future suffer either physical pain or mental anguish, on account of said injuries, if any, you may also take that fact into consideration and allow him therefor such an amount as you may believe, under the evidence, will reasonably compensate him for said future physical pain, if any, or mental anguish, if any, not to exceed in all the sum of twenty-five thousand dollars."

This instruction is manifestly erroneous in this, that it authorizes a recovery for doctor's and surgeon's hire in any sum not exceeding three hundred and fifty dollars; when in the petition upon which this cause was tried, it was alleged that the damages for those items were only the sum of two hundred dollars. It is also erroneous in not limiting the amount of recovery for loss of time from his means of livelihood to the amount claimed in the petition. It will be noted that the petition only claims the sum of two hundred and fifty dollars for loss of time from his means of livelihood.

The verdict in this case was for the sum of five thousand dollars. There was no *remittitur* in the trial court of any part of such recovery, nor was there any offer of that kind. It is suggested, however, that the errors of this instruction can be cured in this court by an entry of *remittitur,* and the question with which we are confronted upon this instruction is, whether or not upon the disclosures in the record of this cause this court should adopt that course. There is no dispute as to what the law is upon this proposition. It is well settled and there is no conflict in the cases by the appellate courts of this State as to the proper rule. The fundamental rule to be deduced from all the authorities upon the question of entering a *remittitur,* either in the trial court or in the appellate court, is that where the court can reasonably estimate the excess in the verdict or judgment and that it is apparent that no injury can be done the defendant by entering such *remittitur* then a *remittitur* will be permitted. Ice Co. v. Tamm, 90 Mo. App. 189, is a well-considered case upon this proposition, and all of the authorities are fully and exhaustively reviewed. It was ruled in that case that it was no longer an open question as to the power of the courts to permit a *remittitur* to be entered in cases where verdicts were excessive, and the learned judge very appropriately announced that "undoubtedly the courts have and constantly exercise this right in cases where the amount of the excess is exactly calculable from the evidence," and it is made clear from that case that, so far as the power of the court to permit the entering of a *remittitur* is concerned, there is no dispute, but the difference of opinion exists as to when this duty should be exercised, and the learned judge, upon that question, said: "But a wide difference of opinion exists as to their duty when unjust damages have been awarded in instances where there is no positive criterion for determining what the damages ought to be; that is, in actions for personal injuries, other cases sounding in tort

and, we suppose, those in contract for unliquidated and uncertain damages. [Loyd v. Railroad, 53 Mo. 509; Waldhier v. Railroad, 87 Mo. 37; Furnish v. Railroad, 102 Mo. 438; Nicholds v. Plate Glass Co., 126 Mo. 55; Burdict v. Railroad, 123 Mo. 221 (in which the authorities on the subject are reviewed); Rodney v. Railroad, 127 Mo. 676; Hollenbeck v. Railroad, 141 Mo. 97; Chitty v. Railroad, 148 Mo. 64.] All those decisions concede the trial court's power to permit such an amendment of the verdict and thereupon refuse a new hearing, because the trial judge is largely concerned with the facts. He must review the finding on them and set it aside if unsupported, in his opinion, by the weight of evidence. But there are exceptional cases in which an excessive verdict cannot be thus cured even at *nisi prius*. If the jury were erroneously charged concerning the measure of damages and, in obedience to the court's instruction, included in their assessment of damages improper elements, and it is impossible to ascertain precisely how much the verdict was increased thereby, a *remittitur* is insufficient to redress the error, which can only be done by granting a new trial."

The case of Slattery v. St. Louis, 120 Mo. 183, was an action to recover damages for injury to property. In that case the following instruction was given: "If the jury believe that the building of the bridge in Twenty-first street in front of plaintiff's premises had occasioned a loss of rent to plaintiff between September, 1890, and October 12, 1891, the date of beginning of this action, the jury will include in their verdict, if they find for plaintiff, the amount of such loss of rent as is shown by the evidence." This instruction was in no doubtful or uncertain terms condemned by this court, and it was expressly ruled that the error of it was not cured by entering a *remittitur*. BURGESS, J., in treating of that instruction, thus announced the rule: "The plaintiff was not entitled to recover damages to her property and at the same time damages for the loss

of rent. It is clear that, if the entire property had been taken or rendered useless and of no value, she could not have recovered, in an action for damages to the property, also what it would have rented for up to the time of bringing the suit. 'In an action for a negligent injury to real property, the rule of damages generally adopted is to allow to the plaintiff the difference between the market value of the land immediately before the injury occurred, and the like value immediately after the injury is complete.' [2 Shearman & Redfield on Negligence, sec. 750.] To the same effect is Pinney v. Berry, 61 Mo. 359. The measure of damages was the difference between the value of the property immediately before the injury and immediately afterwards, as its market value was affected by reason of the erection of the bridge. [Spencer v. Railroad, ante, p. 154; Kansas City v. Morton, 117 Mo. 446; Hickman v. City of Kansas, ante, p. 110.] The error in this instruction was not cured by the *remittitur* of the sum of $258.72, as it is impossible to determine from the evidence what amount was allowed by the jury for damages occasioned by the loss or decrease in the rental value of the property.''

Applying the rules as thus indicated by the cases heretofore cited, should this court undertake to cure the error of instruction numbered 4 by ordering that a *remittitur* be entered? Upon a careful consideration of the entire record we have reached the conclusion that it should not. The record in this cause presents an action for personal injuries, and it is clear that there is no positive criterion for determining what the damages ought to be, nor can this court determine what elements of damages were considered by the jury in arriving at their verdict. They were directed by instruction 4, without any limit being fixed, to assess the damages for the loss of the time by the plaintiff from his means of livelihood, and it would be simply pure guess-work by this court, as was said in Slattery v. St. Louis, supra,

as to what amount was allowed by the jury for damages occasioned by the loss of such time.

It is manifest from this record that the main controversy in this cause is as to the nature and character of plaintiff's injuries and the amount he is entitled to recover. The question of the verdict returned in this cause being excessive is sharply presented by the disclosures of the record.

We have read in detail all of the evidence developed at the trial of this cause and it is apparent that, upon the question as to the nature and character of the injuries received by plaintiff, this is by no means a one-sided case, and while this court will not undertake to retry the case upon purely a question of fact, nor determine upon which side the evidence preponderates, yet where there is an erroneous instruction given directing the jury as to their authority to assess damages, this court will consider all the evidence and say whether or not the ends of justice would be best subserved by having the case resubmitted to a jury upon instructions which are free from any error. The original petition in this case was filed July 25th, 1900; it did not allege or in any manner mention any such injury as hernia; nearly two years after that time, on May 8th, 1902, the petition was amended by interlineation, still no intimation or allegation that hernia was the result of any of the injuries complained of, and on May 28th, 1902, he filed the amended petition upon which this case was tried in which, for the first time, it was alleged that he was suffering from hernia as a result of the injuries received. During the progress of the trial at Sedalia the court appointed Dr. Overstreet and Dr. Evans of that city to make an examination of the plaintiff in respect to the injuries complained of in the petition. They testify that there was no hernia and that the plaintiff was not suffering from any such trouble, and also testified that they found no enlargement or displacement of the heart and no pleura or lung trouble, and that so far as the

fractured ribs were concerned they were so completely healed that they were unable to determine whether or not they had ever been fractured. In view of these disclosures of the record it is highly important that this cause be submitted to a jury upon instructions which in no way give them a roving commission to speculate as to the amount of damages sustained by the plaintiff.

This brings us to the consideration of the complaint by appellant of the exclusion of testimony by Dr. Monahan. Dr. Monahan was introduced by the defendant. He was assistant police surgeon of Kansas City. He stated that he was not on the city pay-roll, but said: "I handled the rich and poor alike, that is, those that could pay me paid me, and those that could not pay me I gave them the attention just the same." He was working under the city police surgeon and rendered services in cases of accident to persons regardless of whether or not he was to receive any pay from the person. Dr. Monahan went to the place of this accident and he saw the plaintiff sitting on the edge of the sidewalk. The error complained of is specially directed to the exclusion of the answer to this question. "Q. I will ask you, doctor, if you saw the plaintiff spit any blood while on the sidewalk or in the street before getting into the ambulance on Brook street?"

The action of the court in excluding the answer to the question as above indicated, was doubtless predicated upon section 4659, Revised Statutes 1899, which precludes any physician or surgeon from testifying concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon. The provisions of this section have frequently been invoked in the trial of causes in this State. The meaning, object and purpose of this statute are nowhere better stated than in Gartside v. Ins. Co., 76 Mo. l. c. 451. It was there ruled that

it was intended by the provisions of this statute to "cast 'the veil of privilege,' or secrecy over information acquired by a physician while professionally engaged in the sick chamber, and necessary to enable him to prescribe. Information acquired by a physician from inspection, examination or observation of the person of the patient, after he has submitted himself to such examination, may as appropriately be said to be acquired from the patient as if the same information had been orally communicated by the patient." It was further said by the learned judge writing the opinion in that case, that it was "doubtless true that a physician learns more of the condition of a patient from his own diagnosis of the case than from what is communicated by the words of the patient; and to say that while the mouth of a physician is sealed as to the information acquired orally from his patient, it is opened wide as to information asquired from a source upon which he must rely, viz., his own diagnosis of the case, would be to restrict the operation of the statute to narrower limits than was ever intended by the Legislature and virtually to overthrow it." [Smart v. Kansas City, 91 Mo. App. 586; Streeter v. City of Breckenridge, 23 Mo. App. 244.]

It will be observed under the rule above indicated that in order to render observations and opinions acquired by a physician privileged the relation of physician and patient must first be established. As was ruled in the Gartside case, after a patient has submitted himself to an examination by the physician, then information acquired by observation would be excluded on the same ground that a direct communication by the patient to the physician would be. So far as the question propounded in this case goes it does not appear whether or not the information desired from Dr. Monahan as to the spitting of blood was from observation prior to any sort of examination of the plaintiff. It is clear that when Dr. Monahan first

appeared upon the scene of the accident if he observed the plaintiff and that he was not at that time spitting blood, there is no reason why such testimony should be excluded, for that is prior to any submission by the patient to the examination of the physician, and so far as this record is concerned, as to that particular question, it nowhere appears that this was information from an observation by Dr. Monahan after he had commenced an examination of the patient. The question was simply as to whether or not he saw the plaintiff spitting any blood while on the sidewalk or in the street before getting into the ambulance on Brook street. The learned trial judge, when this witness was before him, very intelligently and clearly expressed his doubts upon the proposition. He said: ''As to this evidence of the witness, Dr. Monahan, if the witness was only asked to testify and the purpose was only for him to testify to what he saw, what he heard or learned from the patient on the sidewalk, or on the street, at the time he was picked up by the ambulance, it was done in a public place and in the presence of others, there would be a very serious question in my mind whether they would be entitled to protection and be entitled to be considered as confidential communications. However, I do not think that is the important testimony, and cannot be very important, because all of the evidence that has gone before shows that there was no special examination made, except the undoing of the shirt and feeling of the heart or place complained of, and then the patient was put in the ambulance and taken to the hospital, as I remember, either there or the station, where an examination was had and the patient treated. I am satisfied that that evidence would be absolutely incompetent. Anything that this physician learned at the hospital when he did make the examination, upon which he made his prescription and made his diagnosis, would be incompetent, would come within the rule laid down by the

statute, that is, it is a privileged communication and information that the physician is not allowed to disclose if the other party objects. As I say, the first part of it presents a very serious question in my mind. However, as that is not very important and is not the main point in this witness's testimony, I am going to exclude the entire testimony and hold that the witness is not competent to testify to anything that he learned from this witness either by talking to him and asking him questions or by making an examination of the body.''

It is sufficient to say upon this proposition that upon the retrial of the cause if it appears that the relation of physician and patient had been established and that the plaintiff had submitted himself for examination by Dr. Monahan, then any information acquired by observation after that time would be incompetent. But on the other hand, if prior to the establishment of this relationship the doctor observed the patient and acquired information from such observation, we know of no rule of evidence that would make such information privileged.

Appellant complains that the court committed error in the admission of testimony in respect to repairs upon the sidewalk subsequent to the date of the accident. We have examined the disclosures of the record upon that question and it is not shown that any such testimony was admitted, nor does it appear that, to the question which appellant construes as having reference to subsequent repairs, there was any timely objections and exceptions. It is conceded that any testimony of any subsequent repairs upon this alleged defective sidewalk would be inadmissible; therefore, upon a retrial of this cause any testimony offered along that line should be promptly excluded.

This brings us to the final contention of appellant, that the court erred in refusing instruction numbered 11. This instruction was as follows:

''The court instructs the jury that there is no evi-

dence in this case to sustain the allegation that plaintiff received a hernia by falling upon the sidewalk at the time and place alleged in his petition and in assessing his damages, if any, you cannot consider such hernia, if any, which plaintiff may now have, and the same is withdrawn from your consideration.''

It is sufficient to say of this assignment of error in the refusal of this instruction that this court would not be warranted in reversing the judgment on that ground alone. The record discloses at least some evidence that the plaintiff was suffering from hernia as a result of the injuries received by the accident complained of in this proceeding, and even though it be conceded that the preponderance of the evidence upon this subject is upon the side of the defendant, yet under the firmly-established rule of this court, we will not undertake to weigh the testimony or determine upon which side the evidence preponderates. The distinction between the trial court and the court of review in respect to awarding new trials upon the ground that the verdict is against the weight of evidence, must be borne in mind. The trial court has the witnesses before it; can observe the manner and conduct of the witnesses while upon the stand, and upon a motion for new trial it is especially the province of the trial court to review the testimony, and it has the unquestioned right to set aside the verdict and grant a new trial if, in its judgment, the verdict is against the weight of the credible evidence in the cause. In this court we simply have the disclosures of the record with at least sufficient evidence to have authorized the submission of the question to the jury, with no opportunity of judging of the credibility of the witnesses by their appearance, conduct or manner upon the witness stand, and the cause comes to this court, not only with the approval of the jury, but with the approval of the judge presiding at the trial; hence, follows that well-established rule by this court, that where there is any substantial evidence tending to prove any essential

fact embraced in the pleadings, this court will not undertake to disturb the action of the court in submitting such issuable fact to the jury upon proper instructions. The awarding of a new trial upon the ground that the verdict is against the weight of evidence is especially the province of the trial court; for as was said in Ice Co. v. Tamm, supra, the trial judge deals with and is largely concerned with the facts of every case that is tried before him. It is by no means, as has been repeatedly announced by this court, the province of a court of review to undertake to weigh the testimony or to adjust the conflicting statements of the witnesses testifying in the cause; hence the ruling upon this contention must be adverse to appellant.

We have given expression to our views upon the record in this cause. There is nothing remaining to be done except to announce the conclusion, which is, that for the reasons indicated herein, the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

All concur.