MARY PYLE, RESPONDENT, v. EVERETT McNEALY, APPELLANT.—62 S. W. (2d) 921.

Springfield Court of Appeals, June 19, 1933.

Rehearing denied July 12, 1933.

*Barbour, McDavid & Barbour* and *F. W. Barrett* for appellant.

*C. O. Inman* and *J. E. Háymes* for respondent.

BAILEY, J.—This is an action for damages on account of personal injuries and damage to plaintiff's car sustained in a motor car collision of U. S. Highway No. 60, about a mile and one-half west of Mansfield in Wright County, Missouri. The petition alleged that the accident was the result of the negligence of defendant's agent and servant in charge of defendant's truck, which collided with plaintiff's car, in that defendant's servant drove said truck at a high and dangerous rate of speed and drove the said truck to the left of the center of said highway and not as near the right hand side of the highway as practicable. Plaintiff further pleaded the humanitarian or last chance doctrine. The answer set up that the collision with plaintiff's car was due, ''solely to her own negligence,'' in that she was driving her car at a reckless rate of speed; that she failed to keep a vigilant watch when by the exercise of the highest degree of care she could have avoided the accident either by slackening the speed of her car or swerving same to one side; that she drove her automobile on the wrong side of the highway; and that plaintiff saw the truck in time to have avoided the accident by warning defendant's driver. Defendant further alleged that said acts of plaintiff, ''wholly caused and produced said collision and damage, if any, to the plaintiff and

the same were the sole cause thereof.'' The reply was a general denial. In the submission of the case to the jury plaintiff abandoned all charges of negligence contained in her petition, except the alleged negligence of the driver of said truck in failing to keep same as near the right hand side of the highway as practicable. Instruction Number One given at the request of plaintiff submitted negligence in that regard only. Defendant's given instructions submitted to the jury the question of plaintiff's negligence in failing to drive her car as near the right hand side of the road as possible; and also the question of plaintiff's negligence in driving her car at a negligent rate of speed. Upon these issues the jury found for plaintiff and assessed her damages at the sum of $5000 and judgment was rendered accordingly. From this judgment defendant has appealed.

No question is raised as to the sufficiency of the evidence to support the verdict except as to the amount of the damages, hereinafter considered. The accident occurred by reason of either plaintiff, or defendant's servant driving on the wrong side of the highway and on that point there was evidence both ways. Defendant assigns as error the giving of plaintiff's Instruction No. 1 because, it is said, said instruction attempts to cover the whole case but ignores the four assignments of contributory negligence set forth, defendant says, in his answer. Defendant asserts that he pleaded contributory negligence on the part of plaintiff in four particulars, i. e., (1) that plaintiff was driving her car at a dangerous rate of speed; (2) that she failed to keep a vigilant watch; (3) that she drove her car to the left of the center of the highway; and (4) that she saw or could have seen defendant's truck in time by the exercise of the highest degree of care to have avoided the accident. As heretofore indicated defendant was given instructions covering plaintiff's alleged negligence under charges 1 and 3, but no instructions were asked or given covering charges 2 and 4. Defendant admits that as to charges 1 and 3 the giving of instructions on the part of defendant submitting those issues cured any error in plaintiff's instruction number one in ignoring said charges of negligence. It is argued, however, that since charges Nos. 2 and 4 were not covered by defendant's instructions, error in regard thereto in plaintiff's said instruction was not cured, citing Woods v. Moore, 48 S. W. (2d) 202. That case seems to support defendant's theory. It was there held, in effect, that in a personal injury suit where defendant pleaded contributory negligence in more than one particular and on submission of the case plaintiff's instruction authorized a verdict and ignored such pleaded defenses, the error was cured as to such pleas of contributory negligence covered by defendant's given instructions, but as to other charges of contributory negligence not covered by defendant's instructions the error in plaintiff's instruction was not cured. This conclusion is based on the Supreme Court case of State ex rel. North British In-

surance Company v. Cox, 307 Mo. 194, 270 S. W. 113. In the latter case the Supreme Court held that ''Where an instruction on behalf of plaintiff authorizes a verdict on a finding by a jury of all the affirmative facts necessary for recovery, omitting mention of defense pleaded by the defendant, such instruction is erroneous, but it is always cured where such matters of defense are presented in an instruction given on behalf of defendant.'' [270 S. W. l. c. 114.] In that case, however, there was no question raised as to the effect of defendant having requested and had given instructions covering some of the defenses pleaded but neither asking nor receiving instructions on other defenses pleaded, as here. To our minds defendant should be presumed to have abandoned those defenses not submitted where he does submit by instructions some of said defenses. That rule has been applied to plaintiff under like circumstances and we perceive no sound reason why the same rule should not be applied to defendant.

Denkman v. Prudential Fixture Co., 289 S. W. 591, l. c. 596. In that case it was said, as to plaintiff's failure to submit particular charges of negligence ignored in defendant's given instruction, ''how can we look with favor upon a complaint of misdirection in the court's failure to regard a theory of the case which counsel themselves have omitted from their own charge to the jury on the case? Whether such omission in any case is, in fact, intended as an abandonment of such theory, or whether it is prompted by laziness, laches, or guileful design, when the trial court acting thereon gives other instructions treating the omission as an abandonment, plaintiff will not thereafter be heard to say that the jury should have been permitted to consider such theory.'' [l. c. 596; see also Jones v. Norman, 24 S. W. (2d) 191.] In addition that what we consider a waiver of defenses 2 and 4 as above stated, it also appears that defendant requested and the trial court gave a general instruction (No. 7) to the effect that if the jury believed the collision of the cars in question was caused solely by the negligence of plaintiff, or that the plaintiff's negligence contributed thereto, then the verdict should be for defendant. We think this instruction gave to defendant the benefit of any act of negligence or contributory negligence which the jury might have found or considered, whether pleaded or proven. Taken as a whole we are of the opinion defendant has no ground for complaint as to the court's instructions.

It is further to be noted in this case that the answer of defendant nowhere pleaded contributory negligence as a defense. The answer pleaded certain acts of negligence on the part of plaintiff as the direct and ''sole'' cause of the collision. Such allegations in the answer, casting the whole responsibility for the injury upon plaintiff, simply amount to a traverse of the allegations of plaintiff's petition, all of which defenses might have been shown under a general denial. [Ramp

v. Metropolitan Street Railway Co., 133 Mo. App. 700, 114 S. W. 59; Smith v. Kansas City Public Service Co., 43 S. W. (2d) 548, l. c. 554, 328 Mo. 979; O'Donnell v. Baltimore & Ohio R. R. Co., 26 S. W. (2d) 929, 324 Mo. 1097.] It therefore follows that if defendant failed to plead contributory negligence the trial court cannot be convicted of error in ignoring that defense in plaintiff's said instruction. A different rule might be applied where plaintiff's own evidence convicted her of contributory negligence, but no such claim is made in this case. We rule this assignment against defendant.

Defendant charges error in the giving of plaintiff's Instruction No. 3, because it gave the jury unbridled power to award damages for medical treatment and hospital care, although the specific amounts are pleaded in the petition. This instruction sets forth the different elements of damages the jury might consider, including physical pain and anguish suffered and that might be suffered in the future; "the reasonable value of the necessary medical treatment and hospital care received by plaintiff in treating and caring for her injuries;" the character and extent of her injuries; and ends by stating that the jury might award her, "such sum as you find and believe from all the facts and circumstances in evidence will fairly and reasonably compensate the plaintiff for the injuries, if any, sustained by her." The petition set forth that she had incurred doctor bills to the extent of $500; hospital bills to the extent of $500 and ambulance bills in the sum of $30 and that she would in the future incur expense for medical and hospital care. The prayer is for $10,000 in a lump sum. The evidence in the case showed that her total medical bill at the time of the trial was $385 and the hospital bill $132.60, both of which amounts were less than the amounts alleged in the petition. Under such circumstances is the failure to limit the jury to the amounts specified in the petition reversible error? The rulings of our Supreme Court on this subject might appear at first glance to be somewhat conflicting. However, a careful reading shows a clear distinction between those cases where the failure to limit the jury was held to be error and those to the contrary. For example, in the case of Smoot v. Kansas City, 194 Mo. 513, 92 S. W. 363, while it was held that an instruction on the measure of damages for medical services which failed to limit the jury to the amount pleaded in the petition was erroneous, it appeared that plaintiff's instruction, in question, on the measure of damages authorized the jury to return a verdict for a specified amount for medical services which was larger than the amount pleaded. In other cases where the instruction for plaintiff failed to limit the jury to the amount claimed in the petition it was shown by the evidence that the damage proven was either in excess of the amount claimed in the petition, or no showing whatever was made as to the amount of such special damage. [Finley v. Rail-

way, 238 Mo. 6, 141 S. W. 866; Tinkle v. Railroad, 212 Mo. 445, 110 S. W. 1086.]

The rule is well established that where the amount of the special damages proven is less than the amount of such damages alleged in the petition, an instruction for plaintiff on the measure of damages is not reversibly erroneous because it fails to limit the jury to the amount of the special damages claimed in the petition. [Kleinlein v. Foskin, 13 S. W. (2d) 648; Laycock v. United Rys. Co., 235 S. W. 91.]

These cases are bottomed on the theory that where the evidence shows the amount of the special damages to be less than the amount claimed in the petition, the jury will be presumed to do their duty and follow the evidence and allow less than the amount claimed although the instruction places no such limitation upon them. The case of Reavis v. Gordon, 45 S. W. (2d) 99, by the Kansas City Court of Appeals, is cited by defendant as laying down a rule in support of his contention. But in that case, items of damages were inserted in the instruction in question as to which there was no evidence whatever and the instruction was faulty in other respects. The Kansas City Court of Appeals has consistently held to the rule we have set forth here. [See 235 S. W. l. c. 95, supra.] We rule this assignment against defendant.

Defendant offered and the trial court refused defendant's Instruction No. 12 as follows: "The jury are instructed that the testimony of any witness read to you in the form of a deposition is entitled to the same consideration and should be weighed by you under the same rules as though such testimony had been given orally in your presence at the trial."

It is urged that the refusal of this instruction constituted reversible error for the reason a material witness for defendant testified by deposition and that defendant had the right to have the jury informed as to how such evidence should be considered. The only Missouri case that considers this particular question in so far as we have been able to discover is the case of Empire Plow Co. v. Berthold, 237 S. W. 137, wherein an instruction for plaintiff to the effect that in considering the credibility of witnesses, the deposition of witnesses read in evidence should be given the same weight as if the absent witnesses were personally present testifying, was held not to be unfair. In support of the instruction the case referred to relies on a statement of the law contained in 8 R. C. L., Art. 37, p. 1165, wherein the propriety of such an instruction is pointed out. It is also held in this State that an instruction on the credibility of witnesses is fatally defective which does not include those witnesses who testified by deposition. [Hansberger v. Electric L. & P. Co., 82 Mo. App. 566.]

There was no other instruction given on the credibility of witnesses in this case. The instruction offered by defendant, however, required the jury to give the testimony by deposition the same consideration

and weigh the testimony "under the same rules as though said testimony had been given orally." The instruction is confusing in that respect because the jury were not informed as to any rules by which the testimony should be weighed. Whether or not it was intended to mean the jury should give to the testimony by deposition the same weight as other oral testimony in the case or to apply their own rules of credibility as well as weight is left to conjecture. We think the trial court should not be convicted of error where the instruction is not in proper form, although otherwise the instruction would have been proper. [Hogan v. Kansas City Public Service Co., 19 S. W. (2d) 707, 322 Mo. 1103.]

Error is assigned because, according to defendant, the verdict of $5000 is not justified by the evidence and is the result of passion and prejudice. The subjective testimony as to plaintiff's injuries was as follows:

"I was hurt all over. My jaw was broken; my cheek bones was fractured, and I had two broken ribs on the left side. My left knee was broken.—I had an awful lot of pain, my knee pained me and my chest hurt me worse than anything, and my head hurt very bad, and I just hurt all over. I still suffer some with some pain in my head, mostly with a change of the weather. I have a hurting in this cheek (indicating) all the time—not all the time, but at times. I was in the hospital about three weeks before they would operate on me, on account of the internal injuries and abrasions—injuries to my chest and ribs.

"I continued to suffer with pain in my left knee for several weeks —it is never just entirely free from aching, but it doesn't bother me a lot all the time. It pains me worse if I am on my feet a great deal, and I can't walk any distance. It gives me a great deal of pain in a change of the weather. I have a limp, I limp considerable; and to step—I can't step up the steps like I used to. I left the hospital in Springfield and went to a hospital in St. Louis. I was confined there six weeks. They operated on my knee, and taken care of the cuts and bruises, and gave me other treatment that I needed. I used crutches about seven months, or around six months. I can now get around without crutches. I can't tell it has improved any since March. I can't say that it pains any less."

Doctor Klikefelter, who operated on plaintiff, testified in part as follows: "I treated the plaintiff in this case, Mrs. Mary Pyle, first on August 3, 1930, at the Missouri Baptist Hospital in St. Louis. She had swelling and discoloration and tenderness over the left jaw, and several abrasions just below the jaw. The gum was split in the mouth. Mouth couldn't be opened thoroughly. She had soreness over the second and third ribs, left side, near the front. Right leg had discoloration from middle third up to the knee, with several small abrasions. Left leg had several abrasions about the knee cap. Knee

joint was distended, had fluid in it. Gaping or separation of the different parts of the knee cap on the left side. Contusion or bruises over the lower third of right forearm; abrasions over the forearm. Left leg was half an inch shorter than the right. X-ray revealed fracture of the left patella, and pronounced displacement; fracture of the second rib on the left side; fracture of the right condyle of the jaw and slight displacement. Very little displacement of the jawbone.—We operated on her kneecap and put on plaster cast. We operated on her knee the eighteenth of August. She came in on the eighth, but she had abrasions that we thought would contra-indicate an operation until the eighteenth, at which time we operated on her. We opened the knee and sewed the fragments of the patella together. It was a comminuted fracture of the patella, that is, there was several pieces, and we fastened them together, and she wore a plaster cast until we thought the knee was fairly well united. It was an unfavorable fracture, and required more time than most fractures, and, consequently, her knee got fairly stiff during the treatment, and then we worked along with her for quite a time until she got pretty good motion in her knee. In bringing the fragments of the patella together I used special catjut. For the fracture of the jaw we immobilized it, it was not much displaced, and didn't require very radical treatment. The fracture of the rib did not require much surgical treatment. The abrasions and other injuries of the right leg, cleaned up under treatment. She did very good generally. Of course, her knee cap is slow, but it is always slow with similar injury. Just one operation performed on the knee. Recently I examined her knee, but didn't examine her jaw; and her knee is very good, the bones are united, probably not with the thoroughly solid bone union, but they are very well united, and she has very good motion in her knee, but not complete. I will say she straightens it with practical thoroughness and bends it to ninety degrees. No, I don't think the present condition is permanent, I think that some of the injury is permanent, but not all of the present condition. I think the motion will improve, and the knee cap get stronger. It will never be a normal knee cap in appearance, and she will probably never have completed flection but very good. It could cause her pain in the future. All of her injuries were painful.''

"Doctor E. M. Fessenden testified that, "At the time she was brought in she was in pretty bad shape; she showed the effects of severe injuries. She had numerous contusions and abrasions of the body, or—possibly I had better specify—about the head and face, and left leg, right leg, arms, forearm; she complained particularly of a pain in the left leg near the knee, in the knee, and also pain in the chest, pain in the head and jaw; and, in fact, she was bruised and contused all over—I made an examination of her knee today. There is a scar about six inches long to the inner side of the knee cap, of the

left leg, and the knee cap feels quite rough, that is, it is irregular in outline, but it is freely movable on the femur. There is no swelling or no discoloration now.—She has probably fifty per cent limitation of the flexion of the knee. The extension seems to be normal. I think there will be some limitation of motion, permanent, but it is possible that she may get a little more than she has at the present time. Anything in which she would use her leg for flexion, particularly like going down stairs, or where she would have to bend it, it would interfere with her normal walking; walking on level ground there wouldn't be so much interference. The condition I found in her leg, the present condition, could cause her pain at this time, and could in my opinion, cause her pain in the future.''

Plaintiff was about forty-five years of age, a widow, and herself operated a restaurant in Maplewood, Missouri. We have set forth the evidence as to her injuries in detail and from that we gather that plaintiff suffered severe and painful injuries; that she has sustained a permanent injury to her knee cap, in that she has about fifty per cent limitation of the flexion of the knee and is handicapped in the use thereof in walking or climbing stairs; that she has a permanent limp; that she was still suffering pain some eighteen months after the accident; that she received a fracture of the jaw bone which still bothered her at the time of the trial; and that she incurred doctor bills and hospital bills to the extent of over $500.

The verdict in this case does not seem to be so excessive as to indicate passion or prejudice on the part of the jury, and we are reluctant to interfere therewith. It is urged that money was worth much more at the time of the trial than normally and the court should consider that fact. It is rather difficult to determine the value of money in January, 1932, when this case was tried, as compared to the abnormal times immediately preceding it, but it appears to us the verdict is not out of line with other cases of similar character. [Martin v. Union Pac. Ry. Co., 253 S. W. 513; Duffy v. Kansas City Rys. Co., 217 S. W. 883.]

We find no substantial error in this case and the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.