O. C. TILLEY, APPELLANT, v. JOHN W. MOORE, EXECUTOR, ESTATE OF J. J. HENDRICKS, DECEASED, RESPONDENT.—76 S. W. (2d) 754.

Kansas City Court of Appeals. November 13, 1934.

256

*H. K. West* and *Wilson Barrow* for appellant.

*Thomas P. Burns* and *Waldo Edwards* for respondent.

REYNOLDS, C.—The plaintiff, about December 21, 1933, filed his claim against the estate of J. J. Hendricks, deceased, in the Probate Court of Linn County, where said estate was in the course of administration, in the sum of $810, alleged to be the reasonable value of alleged services of personal and other character rendered to the deceased Hendricks in his lifetime at his request, covering a period of four and one-half years next preceding his death.

From the judgment rendered upon a trial in said court, the executor of the estate appealed to the circuit court where, from said court, the cause was transferred by change of venue to the Circuit Court of Macon County. Upon trial had in the latter court before a jury on May 2, 1934, at the April term, 1934, of the court, a verdict for $1200 was returned for the plaintiff, upon which judgment was rendered for him in such sum. Thereafter, on May 3, 1934, the plaintiff offered in writing filed in the cause to remit, and did remit, the sum of $390 from the verdict, seeking to reduce it to the amount of $810 in favor of plaintiff, and moved for judgment against defendant in such sum. Thereafter, on said date, defendant filed motions to set aside the verdict and for a new trial and in arrest of judgment.

One of the numerous grounds alleged in the motion for the new trial for the setting aside of the verdict of the jury and granting a new trial was that it was excessive because it was in excess of the amount claimed in the petition and was so excessive as to shock the conscience of the court and so excessive as to show that the jury was influenced by passion, prejudice, excitement, and misunderstanding. Another ground was that the verdict was for $1200 when only $810 was claimed by the plaintiff in his pleadings.

On May 23, 1934, the motion for a new trial was sustained; and the verdict was set aside by the court for the reason assigned by the court that it was void and excessive. From the action of the court in sustaining the motion to set aside the verdict and to grant

a new trial and the order made thereon, the plaintiff prosecutes this appeal, assigning alone as error that the trial court erred in sustaining defendant's motion for a new trial.

## OPINION.

It is earnestly insisted by plaintiff that his *remittitur* should have been accepted by the trial court and the verdict and judgment reduced accordingly to the amount mentioned in the complaint for which recovery was sought, and he cites a great number of cases wherein *remittiturs* have been allowed or approved to prevent the necessity of a new trial.

There is no doubt concerning the right and power of the circuit as well as the appellate courts to accept and direct *remittiturs* in proper instances where the verdict of the jury is found to be excessive, rather than to order a new trial. [Creve Coeur Lake Ice Co. v. Tamm, 90 Mo. App. 189; Smoot v. Kansas City, 194 Mo. 513, 92 S. W. 363.]

It does not follow, however, that such right and power exists in all cases. There seems to be no doubt concerning such right, when justified by the circumstances of the particular case, that an entry of *remittitur* be permitted. The doubt seems to lie as to when the circumstances of a particular case justifies an exercise of such power.

In cases involving actions for personal injuries and other cases in tort, including those in contract for unliquidated or uncertain damages or amount, where unjust sums are awarded by the jury and there is no positive criterion for determining what the damages should be, there appears a wide divergence of opinion as to the existence of such power. In numerous such cases, however, *remittiturs* have been allowed upon the theory that the trial judge, being largely concerned with the facts, is required to review the finding thereon and set it aside if, in his opinion, it is unsupported by the weight of the evidence.

There are, however, exceptional cases in which an excessive verdict cannot be cured by *remittitur* but in which a new trial is necessary to cure the error. Thus, if the jury was erroneously charged concerning the measure of damages and, in obedience to the court's instruction, included in its assessment of damages improper allowances and it was impossible to ascertain precisely how much the verdict was increased thereby or upon what elements the verdict was based, a *remittitur* is insufficient to cure the error, which can be done only by granting a new trial. Or, when the amount assessed is so glaringly unauthorized by the evidence as to compel a conviction that it was the result of bias, prejudice, and passion on the part of the jury against the losing party, the same is true. [Creve Coeur Lake Ice Co. v. Tamm, supra; Smoot v. Kansas City, supra.]

258

■ In the case of Smoot v. Kansas City, supra, the Supreme Court deduced from all the authorities concerning the right and power of the trial or the appellate courts to permit *remittiturs* a fundamental rule that "—where the court can reasonably estimate the excess in the verdict or judgment and that it is apparent that no injury can be done the defendant by entering such *remittitur* then the *remititur* will be permitted."

■ There is, thus, a measure of discretion vested in the trial court in a determination of whether a *remittitur* should be allowed or a new trial granted, the exercise thereof, however, being subject to review. [Harper v. St. Louis & S. F. Ry. Co., 186 Mo. App. 296, 172 S. W. 55.]

■ Under the rule announced, it will be noticed that the court must be able to say both that the amount to be remitted accurately represents the excess in the verdict and that the defendant is not injured by its allowance and the entry of judgment for the reduced sum.

■ In this cause, the amount mentioned in the claim or the petition as that for which recovery is sought is $810. The verdict returned by the jury is for $1200, which is $390 in excess of the sum claimed. The trial court failed to direct the *remittitur* of the $390 offered by the plaintiff and failed to reduce the verdict or judgment by such sum but, instead, granted defendant's motion for a new trial for the reason stated of record, that the verdict was void and excessive. Among the grounds advanced by the defendant in the motion for a new trial was the ground that the verdict was in excess of the amount set forth in the complaint and was so excessive as to shock the conscience of the court and was so unreasonable as to show that it was the result of bias, prejudice, and misunderstanding upon the part of the jury.

■ That the verdict was excessive, as a matter of law, in the sum of $390, in that it exceeded the amount sued for in plaintiff's petition in such sum, cannot be denied; and, for such reason, it was void and required to be set aside unless it could be amended by *remittitur*. [Creve Coeur Lake Ice Co. v. Tamm, supra.] Whether it was otherwise excessive, beyond such sum, was a matter for the trial court upon a consideration of the evidence. It would appear, from the action of the court in refusing to permit the *remittitur* in said sum, that it was not of the opinion that said sum represented the amount of the excess in said verdict and that said verdict, in said sum, was not supported by substantial evidence in the record and that the verdict and judgment reduced by the amount offered to be remitted would not be supported by substantial evidence in the record. Otherwise, it would have permitted the *remittitur*. Whether it was of such opinion or not, an impartial review of the evidence in the record demonstrates the fact that there was neither

substantial evidence upon which to base the verdict for $1200, as returned, nor for the sum of $810, mentioned in the petition.

Whether it was excessive in the first of such respects alone—that is, by reason of having exceeded the sum sued for by the sum of $390—or whether for the reason that there was no substantial evidence in the record to support it in said sum of $1200 or in the sum of $810 or in both, it was in any event void and subject to be set aside unless it could be remedied by *remittitur*. Whether it could be so remedied by *remittitur* depended upon whether the excess could be accurately calculated and determined and whether there existed any positive criterion by which the amount for which the verdict and judgment ought to be could be reasonably determined and entered without injury to the defendant. [Smoot v. Kansas City, supra.]

In some instances, both the excess and the amount for which the verdict and judgment should be are easily ascertainable, as in the case of a suit upon a written instrument for a fixed sum due. In such case, the fixed sum due is the amount for which the verdict and judgment should be rendered, or for the balance due thereon where credits are shown. In the event of a verdict in excess thereof, the actual excess appears by reference to such verdict and the written instrument. In such instances, it is entirely proper to allow the *remittitur*. The defendant cannot be injured thereby.

However, the demand in this case is unliquidated, and the excess cannot be determined in such manner. Here the amount for which the verdict and judgment should be rendered must necessarily be determined before the excess can be arrived at. The amount of the excess is the difference between the verdict and the amount for which the verdict and judgment thereon should be.

The mere statement of the amount sued for in the claim or petition in this case does not fix the amount for which verdict and judgment should go. It merely fixes the amount in excess of which the verdict and judgment should not, in any event, go. The trial court, in this case, could not say, from the mere fact that the verdict exceeded by the sum of $390 the amount claimed, that such sum accurately represented the real excess therein and that the sum for which the verdict and judgment should be rendered was $810, regardless of such excess or the amount for which verdict and judgment should be as might appear from a consideration of the evidence.

There is no evidence in this case by which the trial court was authorized to say that the verdict rendered was the result of bias and prejudice upon the part of the jury against the defendant. The case does not seem to have been hotly contested before the jury; and there was an entire absence of any fact or facts shown by the evidence that would tend, in the remotest way, to create or arouse prejudice upon the part of the jury against the defendant.

Of course, the mere inference might have arisen from the fact that the verdict was excessive in the sum of $390; but such inference, under the facts in the record, could have but little weight, unsupported as it was by other evidence in the record. The record shows that the jury was never advised by instruction or otherwise of the amount of plaintiff's claim or that its verdict should not exceed it. The cause was submitted to it in a way which gave it a roving commission to speculate as to the amount of the compensation to which plaintiff was entitled.

The record presents an action in which judgment is sought on account of alleged services rendered, some of one character and some of another. Some were alleged to be for nursing the deceased; some for attending his other personal needs and requirements, not specifically set out; some for assisting him in his business matters, relative to loans, mortgages, and properties; some for services in taking him to see his own property and to see properties upon which he had loans; some for conveying him to and from town in plaintiff's car—running through an alleged period of four and one-half years. The reasonable value of the particular services claimed to have been rendered nor the extent or volume thereof appears stated in the petition or the claim filed, other than such as might appear from a general allegation that the services rendered were, in the aggregate, reasonably worth $15 per month or $180 per year. Neither do the volume and extent of any particular service rendered appear in the claim or evidence, except in a limited way; nor does the value of any such particular service appear, except from the general statement made by two witnesses to the effect that the plaintiff's services were worth one dollar per day. The evidence as to the volume and extent of any services rendered, except in a very few instances, was vague and indefinite. Likewise, the evidence as to value was vague and indefinite. There was no evidence of the value of any particular service, except that one witness, testified that it should be worth more than one dollar a trip to take the deceased to town and back. How much more was not stated, nor was there any evidence from which the jury might have found the number of trips made. There was no evidence as to the properties plaintiff took the deceased to see, nor the distance traveled, nor the time given in so doing. There was no evidence as to the number of full days the plaintiff was engaged, nor what time was consumed by him daily or upon any day on which he was engaged. A fair statement of the facts revealed by the evidence as to the services performed is that, upon one occasion, the wife of the deceased broke her hip and that, during a period of eighteen to twenty-three days, the plaintiff was there from two to four to six hours each day, helping attend Mr. and Mrs. Hendricks, both of whom were very old. During such time, Mr. Hendricks seems to have been afflicted with diarrhea, and the house seems to have been dirty and soiled, and the plaintiff assisted

in cleaning both Mr. Hendricks and the house. He seems to have swept the house. It required about two hours to clean Mr. Hendricks. Plaintiff attended to buying the groceries during that time and, perhaps, to their delivery. It is not shown what time or trouble was required in so doing. He went to some place and bought chickens. It is not shown where. He seems to have taken care of the place at times, but just what he did in that regard is not shown. He was seen to go to the Hendricks' home frequently and, at some times, was noticed carrying in coal. Sometimes he was observed shoveling off the snow, and sometimes he was seen taking Mr. Hendricks to town and back. Just how much snow he shoveled or how often does not appear. Neither is it shown how often he took the deceased to town nor what the distance was nor the time required. Upon one occasion, he was seen fixing the roof of the house and was so engaged about thirty minutes. He sometimes mowed the yard. How often does not appear. On one occasion, he put the ceiling on the dining room. He was seen by different witnesses calling at the Hendricks' home frequently, often daily, and sometimes several times a day. Upon such occasions, he was sometimes noticed to be engaged about the place for an hour, sometimes longer, sometimes less. Upon some occasions, he attended to the fires. He usually furnished his own car in taking Mr. Hendricks about. He helped Dr. Jenkins reduce the deceased's hernia. He helped at this upon numerous occasions; he visited Dr. Jenkins' office to get medicine for the deceased and, at times, took the deceased there to see Dr. Jenkins. It would appear that he took the deceased to see Dr. Jenkins some ten or twelve times. The evidence also tends to show that, during the time covering plaintiff's alleged services, he had much personal business of his own with the deceased, which, it is fair to assume, occasioned many of his visits to the home of the deceased and some of the time spent there by him. With the exception of an interval of some seven or eight weeks while plaintiff was in the hospital and other short intervals from time to time, plaintiff appears to have been at the Hendricks' home, more or less, every day over a period of some six or seven years. On numerous occasions when he stopped there, it was not shown that he did anything more than call. The deceased lived between plaintiff's residence and the town (Brookfield). On days when plaintiff was too busy to go to the Hendricks' home, he usually sent someone in his stead.

It was impossible for the trial court to tell with any accuracy just what matters the jury took into consideration in arriving at its verdict and in fixing the amount thereof at $1200 or what element or elements its verdict was based upon or what particular services it found had been rendered by the plaintiff and the value it attached to each. In subtracting from the verdict, the court could not determine with accuracy just which elements, upon which it was

based, were being eliminated or which remained, so that the court might determine with accuracy what the proper judgment ought to be without injury to the defendant. There was no positive criterion existing by which the court could determine with accuracy the amount of excess to be remitted or the amount for which judgment should be rendered. The record presented a sea of confusion when it came to determining such amounts. It was clear therefrom that neither a judgment for $1200 nor for $810 could be supported thereby; but it could not with accuracy be determined the exact or the approximate amount less than $1200 for which the verdict should have been rendered, other than somewhere in the lower brackets. In any event, the verdict as rendered was excessive as a matter of law and as a matter of fact upon the evidence; and, under the evidence, it was excessive in a greater sum than $390, the amount of which excess the trial court could not, upon the record, with any certainty determine.

■ It was therefore within the sound discretion of the court to refuse the *remittitur* offered and to grant a new trial, and its action in so doing was proper.

■ The defendant urges, upon this appeal, certain other grounds set up in the motion for a new trial by which it is contended that the trial court would have been justified in granting the motion for a new trial as well as upon the ground it did. It is unnecessary to notice such grounds thus advanced for the reason that sustaining defendant's contention with respect thereto would result only in what has already been accomplished by the action of the court in granting the motion for new trial and in ordering a new trial and its affirmance here. The premises considered, the judgment of the trial court granting the motion for a new trial and ordering a new trial should be and is affirmed. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment of the trial court in sustaining defendant's motion for a new trial and in ordering new trial is affirmed. All concur.